No. 24,717.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ELLIS, *Appellant*, v. FRED N. DREILING and THE ÆTNA CASUALTY AND SURETY COMPANY, *Appellees*.

SYLLABUS BY THE COURT.

ACTION AGAINST RETIRED COUNTY TREASURER AND HIS BONDSMEN—*Case Not Properly Tried—Findings Not Supported by Evidence—New Trial*. In an action by a board of county commissioners against a retired county treasurer and his surety for the failure of the treasurer to turn over to his successor money received by him as such treasurer, a new trial will be directed where it appears that the action was not properly tried and where it appears that material and necessary findings of fact were not supported by evidence.

Appeal from Ellis district court; ISAAC T. PURCELL, judge. Opinion filed January 10, 1925. Reversed.

Ellis County v. Dreiling *et al.*

*J. P. Shutts, J. M. Weisner,* both of Hays, *Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the appellant.

*A. D. Gilkeson,* of Hays, and *Guy L. Hursh,* of Topeka, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.:   The plaintiff sued the defendants for $5,699.35, items alleged to be due to plaintiff from defendant Dreiling as treasurer of Ellis county, which amount he had failed to turn over to his successor in office.   The defendant company was the surety on the bond of Dreiling as county treasurer.   Judgment was rendered in favor of the defendants, and the plaintiff appeals.

Findings of fact and conclusions of law were made as follows:

"During the term of Fred N. Dreiling as county treasurer of Ellis county, Kansas, many errors were made by him in the keeping of his records, from time to time, both for and against him.

"There is no evidence that Dreiling ever made any false entry in the books, or that he, at any time, ever converted any of the funds of the county or made an erasure or change in the records to cover up anything.   The items which go to make up the shortage claimed consist of erroneous entries.   They did not affect the county funds or assets in Dreiling's hands.   He gained nothing by them nor did the county lose anything thereby.   They were matters that could, and perhaps were, corrected later.   The city of Ellis account was an erroneous entry or mistake, which was corrected to the satisfaction of both the city of Ellis and the board of county commissioners of Ellis county, Kansas.   He carried in his hands an excess of the balance called for in his books, to the amount of $1,263.   This was accounted for and turned over to his successor in office.

"He kept by order of the board of county commissioners accounts as treasurer in nine (9) different banks of Ellis county, and it is nowhere shown that he ever gave a check drawn on these funds or accounts, for his own or private account or use.

"During his terms of office he carried his balance on his daily statements, and also kept a memoranda of the amounts by which the assets held by him as treasurer varied the amount called for by this balance.

"At the close of each year he made an annual settlement with the county commissioners, as required by law.

"At the close of Dreiling's term of office his daily balance called for assets in the amount of $49,811.15.   He had in his hands as treasurer funds in excess of that amount $1,263.   All of these assets were turned over to his successor, including the amount called for by his balance and the amount held by him in excess thereof, such excess being caused by the errors in the book before referred to.

"Dreiling, as such treasurer, kept the county funds separate, never mingled his funds with those of the county; properly deposited all money of the county he received with the county funds, and expended such money only for proper

county purposes. All monies coming into his hands as treasurer was either properly expended or turned over to his successor in office and accounted for.

### "CONCLUSIONS OF LAW.

"Judgment should be rendered for the defendants for their costs."

We quote from the brief of the plaintiff:

"The court in making its findings of fact, refused to make any of the findings requested by the plaintiff as to the specific items alleged to constitute shortage, but simply found in a general way that the defendant had accounted for all the money in his hands.

"The court found, however, in addition to this, that his daily statement called for assets in the amount of $49,811.15, and that he had in excess of that amount, $1,263, which he turned over to his successor in office. We particularly desire to call the court's attention to this finding, as we think it shows conclusively that the plaintiff was entitled to judgment for the full amount sued for, for the reasons hereinafter set out."

The court found that at the close of Dreiling's term of office his daily balance called for assets in the amount of $49,811.15; that he had in his hands in excess of that amount, $1,263; and that Dreiling turned over to his successor all of these assets, including the amount shown by the daily balance and the excess of $1,263. The evidence, as abstracted, does not show that amount of assets turned over; it shows that assets amounting to $48,151.15 only were delivered to his successor when the latter took charge of the office, and that a check for $1,263 was later given the successor to cover the excess amount in Dreiling's hands as treasurer. There was no evidence to show that assets amounting to $49,811.15 were turned over. That part of the finding was not supported by evidence.

The findings of fact contain the following statement: "They were matters that could, and perhaps were, corrected later." This statement concerned the errors in bookkeeping that had been made. Of this statement, one part may be stated as follows: "They were matters that could have been corrected later." That does not amount to a finding of fact; it was a statement of what could have been done, but not of what had been done. The other part of the statement, "They were matters that . . . perhaps were corrected later," does not state a fact; it states a possibility, nothing more.

The finding that the defendant turned over to his successor $49,-811.15, and the finding, or rather statement, that the errors were matters that could have been and perhaps were corrected later, must have entered into the judgment.

The evidence for the plaintiff consisted almost wholly of the books kept by defendant Dreiling while he was county treasurer. Those books showed that in 1917, in the collection of taxes, penalties were collected from taxpayers amounting to $1,487.19. The books also showed that in the collection of taxes for 1917 there were rebates to taxpayers who paid their taxes on or before December 20 amounting to $4,361.41. Dreiling charged himself with the amount collected, and no more. He entered on the book an amount equal to the total of the rebates as disbursements made by him. The penalties and rebates appear to have been carried on the books in that manner until the time the funds of the office were turned over to his successor. The defendant Dreiling received the penalties, but he did not receive the rebates. It was improper for him to enter the rebates as disbursements, because he did not make any disbursement of them, and should not have so entered them. By so doing he erroneously depleted his receipts by the amount of rebates shown as disbursements. In balancing the books between the county treasurer's office and the county clerk's office, the rebates should have been considered, and credit should have been given by the county clerk to the county treasurer for the rebates; but the county treasurer should not, under disbursements, have received credit for those rebates. He did not receive the money and he did not pay it out.

The other large item concerned election expenses for the general election of 1918. The defendant paid out on warrants regularly issued for general election expenses $2,249.83, for which amounts he took credit against the county; but his books showed that he also took credit for moneys disbursed to the several townships and cities as election expenses to the amount of $2,173.73. The county treasurer did not pay the election expenses twice. His books show that he did. This mistake was carried on the books by Dreiling until settlement was made with his successor.

One finding of the trial court states, and that finding was supported by evidence, that defendant Dreiling made mistakes in his books both for and against himself. So many mistakes were made that they almost destroyed the probative force of the books, but they could not be rejected; they were competent evidence.

Defendants argue that the plaintiff did not show that Dreiling appropriated to his own use any of the money represented by the mistakes in bookkeeping. In response it may be stated that the defendants did not show, except by oral evidence, that Dreiling did not

take the money represented by the erroneous entries. The defendants should not have rested with the oral testimony, but should have shown wherein and how the erroneous entries were corrected or offset by other entries and that Dreiling did not misappropriate the money claimed by the plaintiff.

The rule of law governing the introduction of evidence under such circumstances is found in 20 C. J. 482, where, in discussing the law of criminal embezzlement, the writer says:

"As in other criminal cases, the burden of proving all the elements of the crime rests on the prosecution; but where the state has made a *prima facie* case of embezzlement, as by proving facts which give rise to a presumption in its favor, it becomes incumbent upon defendant to adduce evidence in denial or explanation of the incriminating circumstances."

The rule is the same in civil actions as it is in criminal cases, except that in criminal cases facts must be proved beyond a reasonable doubt.

The plaintiff argues that it is entitled to judgment for the amount sued for in this action. This argument cannot be sustained. There were many errors made by the defendant in keeping the books of his office. Many of those errors were shown by the evidence for the plaintiff. To sustain this argument the evidence must have shown that the mistakes resulted in Dreiling's getting the money represented by those mistakes and appropriating it to his own use. Mistakes do not show that he misappropriated the money. If the plaintiff had desired that judgment be rendered in its favor by this court, it should not have rested with the introduction of the books; it should have gone ahead with explanation of those books and have shown by them that the defendant actually appropriated to his own use the money represented by the mistakes. The books made a *prima facie* case for the plaintiff, but when the trial court made findings of fact that almost completely exculpated Dreiling from any wrongdoing, judgment should not be rendered for the plaintiff on a *prima facie* case made by books that are so erroneous as to have almost no probative force.

The plaintiff rested on making a *prima facie* case as shown by the books. The defendants rested on their oral testimony. The truth could have been ascertained by a proper examination of the books. On the evidence, the trial court found for the defendants and rendered judgment in their favor. That judgment would not be disturbed except that material and necessary findings of fact were not supported by evidence.

Because material and necessary findings of fact were not supported by evidence and because the action was not properly tried, it should be tried again. On another trial the plaintiff should not rest on a production of the books without showing that the errors made were not in some manner corrected or offset by other mistakes. The plaintiff should establish that Dreiling has money which belongs to the county. The defendants should not rest on oral testimony tending to prove that Dreiling did not take any of the money belonging to the county. Each side should seek to establish the truth.

The judgment is reversed and a new trial is directed.