No. 30,771.

Ben Raines, Trading under the Name and Style of Ben Raines Grain Company, *Appellee*, v. The Central States Fire Insurance Company, *Appellant*.

(16 P. 2d 495.)

Opinion filed December 10, 1932.

*Arnold C. Todd, James G. Norton, Carl O. Bauman, Julian E. Ralston,* all of Wichita, and *Alford Williams,* of Pratt, for the appellant.

*William Barrett* and *George Barrett,* both of Pratt, for the appellee.

The opinion of the court was delivered by

Sloan, J.: This was an action to recover on a fire-insurance policy. The plaintiff prevailed, and the defendant appeals.

The appellee owned and operated a grain elevator at Preston. On June 27, 1929, the appellant issued to the appellee its policy of insurance by the terms of which it undertook to insure the elevator and its contents against loss or damage by fire in an amount not to exceed $2,000. The policy was the ordinary Kansas standard form. The elevator and its contents, consisting of wheat and corn, of the value of $1,666.33, was destroyed by fire on January 27, 1930, while the policy was in full force and effect. The appellant admitted the issuance and existence of the policy but denied that the appellee owned or had an insurable interest in the grain contained in the elevator, except to the extent and of the value of $16.66. The sole question before the trial court was the ownership of the grain.

The appellee testified on his direct examination that he was the owner of the elevator and its contents, and that it was destroyed by fire on January 27, 1930. On cross-examination he stated that he had an arrangement with the Root Grain Company whereby they furnished him money to pay for the grain; that he paid for the

grain as it was delivered and then drew a draft on the Root Grain Company through the bank for the amount of the purchase; that he was to get 25 per cent of the net profit made from the sale of the grain purchased for the use and operation of the elevator, and that he had been reimbursed for all of the money expended in purchasing grain, except a very small amount. He admitted having signed what was identified and offered in evidence as exhibit D, which is as follows:

"I was the sole owner of the elevator at the time of the loss but was using it as a buying station for the Root Grain Company of Kansas City, Mo. We bought the grain and gave our check to pay for it and each day we drew a draft on Root Grain Company for same amount of grain bought and paid for by us, the draft was handled through the Farmers State Bank at Turon, Kan., and when there was enough grain bought to fill a car it was loaded out for the Root Grain Company and all of the grain in the elevator at the time of the fire belonged to the Root Grain Company.—By Ben Raines."

On redirect examination he explained that he signed this statement at the suggestion of the insurance adjuster, who said he had to have it in order to settle up the loss. He further testified:

"I have an agreement with the Root Grain Company relative to the furnishing of money for the operation of the elevator at Preston, Kan., that was destroyed by fire. The Root Grain Company was to furnish me the money to buy grain at Preston. I have an agreement with them to that effect. When I needed some money they gave me the privilege of drawing a draft, so in order to keep it straight when I would buy grain I would draw a draft for that amount. I was not buying for the Root Grain Company. I made this agreement with Mr. Spence for the Root Grain Company. They wanted me to take the elevator and run it, buy the grain. I was to get 25 per cent of the net profits and the other 75 per cent was to be applied on my brother's indebtedness to the Root Grain Company, and the Root Grain Company was to furnish the finances. The terms were, I was to pay six per cent interest for the money. I borrowed it from them. I gave no note or other evidence of indebtedness. I did not give any mortgage or any lien on the grain to anybody. . . . When the grain was bought it was my grain and I stood the loss."

The appellant earnestly contends that the trial court erred in overruling a demurrer to appellee's evidence and in denying a motion for an instructed verdict in favor of the appellant. It is the theory of the appellant that the admission made by the appellee and the contract between the appellee and the Root Grain Company established, as a matter of law, that the appellee was not the owner of the wheat in question, notwithstanding the testimony of the ap-

pellee that he was the owner of the wheat. The plaintiff may defeat a *prima facie* case by offering evidence inconsistent with such *prima facie* case. (*Kibby v. Gibson*, 72 Kan. 375, 83 Pac. 968; *Ellis County v. Dreiling et al.*, 117 Kan. 354, 232 Pac. 246.) Before this rule can be applied, however, it is necessary that such evidence be irreconcilable with the *prima facie* case and of such character that the court is bound to accept it as true as a matter of law. Where the terms of an oral contract are shown, without any conflict of evidence, its construction is a question of law for the court. (*Dohner v. Grocery Co.*, 116 Kan. 237, 226 Pac. 767.)

The evidence as to the terms of the oral contract was conflicting. The appellee in his cross-examination made statements from which it could reasonably be inferred that he was a purchasing agent for the Root Grain Company on a commission basis, but his version of the contract as related on his redirect examination revealed a different relation between the parties. He testified that the arrangement was for the advancement of finances with which to enable him to carry on his business. He paid interest on the money, deducted 25 per cent of the profit for operating expenses and the balance of the profit was applied on indebtedness owed the grain company by his brother. He was obligated to stand the loss, if any. The terms of the contract were not definitely established and the court could not, as a matter of law, construe the contract. The conditions of the contract under the evidence was a question of fact for the jury to determine. The statements contained in exhibit D were nothing more or less than an admission against interest, which the appellee had a right to explain on his redirect examination. It was not a judicial admission, and the elements of estoppel were not present. The inconsistency tended to discredit the witness but did not close his mouth. The instruction of the trial court fully covered the issue and directed the jury to take into consideration the statements and conduct of the parties, the oral agreement, if any, between the appellee and the grain company, in determining the ownership of the wheat. This was not error.

The judgment of the district court is affirmed.