No. 40,484

Roy Avery and Lulu Avery, *Appellees,* v. The City of Lyons, Kansas, a Municipal Corporation, *Appellant.*

(314 P. 2d 307)

Opinion filed July 31, 1957.

*Edward Wahl,* of Lyons, argued the cause, and *Bronce Jackson,* of Lyons, was with him on the briefs for the appellant.

*Frederick Woleslagel,* of Lyons, argued the cause, and *L. E. Quinlan,* of Lyons, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: During the night of April 24, 1954, the store building owned by plaintiffs, in the city of Lyons, was struck by lightning, resulting in an explosion and fire. Plaintiffs brought suit against the city to recover damages, their theory being that the explosion and fire were caused by the presence of natural gas in and under the building which had leaked from defective gas mains owned by the city. Plaintiffs recovered a judgment for $36,127.59, and the city has appealed.

For a number of years prior to the date in question Roy Avery and his mother, Lulu, owned and operated a general mercantile store in a building owned by them in the city of Lyons. It was a two-story brick building about seventy-five years old, and was located at the northeast corner of the intersection of East Avenue and Main Street. It was twenty-five feet wide and one hundred forty feet long. A room about twenty-five feet by fourteen feet at the rear had been partitioned off and was leased as a beauty shop. There were gas appliances in the beauty shop. The second floor of the building contained apartments for living quarters. The building was so constructed that there was a space of about twenty-two inches between the ground and first-floor level.

On the date in question, and for many years prior thereto, defendant city served its residents with natural gas distributed through its system of gas mains and lateral lines. Gas mains and lines were installed in 1935. For some time prior to April 24, 1954, plaintiffs and other occupants of their building had smelled strange and unusual odors. Some were described as sewer gas and others as natural gas. City employees and a private plumber made an inspection, but it appears that no definite, specific repairs were made. The explosion and fire severely damaged the building and damaged or destroyed its contents. The explosion raised a portion of the first floor as much as two or three feet, indicating the presence of gas under the building. On the night of the fire gas was noticed bubbling from between the paving bricks directly south of the building. Following the fire the city gas lines in the alley and street adjacent to the building were inspected and several small leaks were discovered in the rusted and scaled pipes.

Pursuant to G. S. 1949, 12-105, plaintiffs filed a timely claim with the city for damages in the amount of $45,746.75. It was disallowed and suit was brought for that amount. The jury returned a general verdict for $36,127.59 and answered special questions, and judgment was entered in harmony therewith. The special findings are as follow:

"No. 1. What was the direct and proximate cause that damaged the Avery store?

"Answer: Explosion of accumulation of natural Gas under the floor of plaintiffs building leaking from the city's Gas Mains & resultant fire.

"No. 2. If the plaintiffs were negligent, state what such negligence consisted of?

"Answer: None.

"No. 3. If the defendant was negligent, state what such negligence consisted of?

"Answer: Failing to check the physical condition of the Gas mains. Failing to use customary and scientific devices.

"No. 4. If fugitive natural gas was present in the Avery building from what source did it come?

"Answer: City Gas mains.

"No. 5. If your verdict is for the plaintiffs, then state the amounts of the various items of damages which you allow them.

"Answer: Damage to building: $15,000.00. Damage to Fixtures: $6,-390.54. Damage to merchandise: $11,351.69. Damages for business interruption: $1,385.36. Damages for loss of good will and going concern value: $2,000.00. Total damages: $36,127.59."

Defendant city specifies nineteen grounds of alleged error in the trial of the case and rulings on post-trial motions. We first discuss the order overruling its demurrer to plaintiffs' evidence.

A brief résumé of the facts already has been given. Plaintiffs' evidence in chief, as abstracted, covers some seventy-seven pages. This court has studied and considered it, but, due to the disposition being made of this appeal, it is thought that no useful purpose would be served by a detailed discussion of it. We are of the opinion the evidence was sufficient to withstand the demurrer and the trial court did not err in its ruling. (*Hashman v. Gas Co.*, 83 Kan. 328, 111 Pac. 468; *Richards v. Kansas Electric Power Co.*, 126 Kan. 521, 524, 525, 268 Pac. 847; *Jelf v. Cottonwood Falls Gas Co.*, 160 Kan. 112, 160 P. 2d 270.)

Another alleged error relates to the rejection and exclusion of evidence.

Plaintiff Roy Avery testified that the loss on store fixtures was $6,390.54, and that on merchandise $11,351.69. The jury allowed

the full amount on each of those items (answer to special question No. 5, *supra*). Defendant city offered to show by the county clerk that exactly one month prior to the fire plaintiffs had returned personal property assessment sheets, signed by Roy, in which the fixtures were valued at $2,000 and the stock of merchandise at $6,000. This evidence was objected to by plaintiffs on the ground of not being the best evidence as to market value, and for the further reason that it did not represent market value as of the date of the fire. The objection was sustained.

In this connection, the parties refer to a number of authorities, including *Iron Works v. Construction Co.*, 116 Kan. 482, 227 Pac. 369, and *Jelf v. Cottonwood Falls Gas Co.*, 160 Kan. 112, 160 P. 2d 270, neither of which is particularly in point due to different factual situations.

This court, in common with everyone, of course realizes and knows that values placed on personal property assessment sheets by assessors or the owners rarely, if ever, reflect the actual market value of the property, and we have no doubt but that such was the case here. And neither do we close our eyes to the practical fact that ordinarily the value of a stock of merchandise of a going concern fluctuates from day to day and month to month. Nevertheless, it is our opinion that under the state of the record the evidence in question was admissible and was erroneously excluded. Here the values of the fixtures and stock of merchandise at the time of their damage or destruction were directly and specifically in issue. The tax assessment sheets had been signed and filed by one of the plaintiffs just one month prior to the fire. Their introduction in evidence would not have been conclusive on plaintiffs on the question of values—they were of course subject to explanation as to the "rate" at which the property was listed, any changes or additions in the fixtures and stock in the meantime, or as to any other matter affecting the value.

In 31 C. J. S., Evidence, § 283, p. 1034, it is said that except where they are clothed with a statutory privilege against disclosure, returns for taxation, being statements of the party to be affected under circumstances in which it is incumbent on him to disclose the truth, are regarded by the great weight of authority as admissions which may be received in evidence even on the question of value.

In 20 Am. Jur., Evidence, § 385, p. 348, it is said that according to

most cases the owner's valuation in rendering property for assessment is evidence of value, although some take the contrary view.

In an annotation at 17 A. L. R. 170, at p. 175, appears the statement that the owner's valuation in rendering property for assessment is evidence of value, and it is followed by numerous decisions in support of the rule. See also the annotation at 85 A. L. R. 1485, at p. 1486.

Generally speaking, on the question of the admissibility of tax-assessment records in evidence for a purpose other than taxation, one of the principal tests appears to be whether the owner made the valuation or participated in the doing so. In the annotation at 39 A. L. R. 2d 209, at p. 230, appears the following general statement, supported by numerous authorities:

"Although, as previously indicated, assessed valuation, as such, is not generally admissible on the question of the value of property, an owner's valuation of his own property, or a valuation in which he has participated, for tax purposes, is usually held admissible in proceedings other than tax proceedings where the value of the property is in issue, in most instances on the ground that the owner's valuation constitutes an admission against interest, where he seeks to establish a higher value for a purpose other than taxation. . . ."

In view of all the facts and circumstances, we think that here the personal property tax-assessment sheets were admissible and were erroneously excluded.

Another matter called to our attention is this:

Plaintiffs claimed damage to the building in the amount of $18,619.16. The jury allowed $15,000. During the trial, when asked if the building and lot were valued at $5,000 on the tax rolls, plaintiff, Roy Avery, replied that "it could be . . . around that." He sold the lot and what remained of the building prior to the trial. On cross-examination he was asked what he had received for the lot and remains of the building. An objection to this question was sustained. Later, at the hearing on the motion for a new trial, defendant called Roy as a witness and attempted to show that he had received $15,000 for the lot and remains of the building. An objection was made to this line of testimony and in sustaining it the following transpired:

"The Court: 'Well, I didn't permit that testimony on the direct trial, did I?'

"Wahl: 'That's right.'

"The Court: 'I am going to stay by my ruling.'

"The Court: '. . . I am ruling that it is too late to put on the owner, the plaintiff, in regard to value of that property.'

" 'I think this matter now is in regard to the misconduct of the jury, as I understand it.'

"Wahl for the Defendant: 'Yes, it is a little broader than that. It is misconduct of the jury, together with, we think misdirection on the part of the court.'

"The Court: 'That is okay, too. The court can't help that now.' "

In offering this line of testimony at the hearing on the motion for a new trial defendant was proceeding under G. S. 1949, 60-3004, but it is readily apparent that the trial court was confused as to the purpose of it, and apparently took the attitude that it was a continuation of the trial itself. Defendant was within its rights in offering this evidence which had previously been rejected, and the action by the trial court at the hearing on the motion for a new trial was clearly erroneous.

In further support of its contention that it was not accorded a fair trial, defendant also calls this to our attention:

While counsel for defendant was making his argument to the jury he was interrupted by the court, whereupon the court addressed the jury as follows:

"Mr. Reporter, you will take this: Gentlemen of the jury, this suit is against the City of Lyons, which is a municipal corporation and it is operating a public utility — gas — and it would have the same liabilities in the operation of its municipal plant that any other corporation would which was engaged in the selling of gas. There is not a corporation in existence in the United States but what is made up of stockholders that may own a certain interest in that company or that utility; and the stockholders in a company make the profit or they suffer the loss; whether it is a Municipal corporation, the Western Light and Telephone Company, the Southwest Bell Telephone Company, the company itself doesn't have any money. It gets it by the sale of stock. It has these various people who make up all these corporations, whether they are municipal or whether they are private. Now, I have given you this instruction that counsel in their arguments to the jury are supposed to present their case to the jury, and also you will see in there that sometimes counsel in their zeal—and that means for the plaintiffs or for the defendant, may overstate or misstate the facts shown by the evidence. When you folks go in there, you are going to decide this case, not on the fact that this is a case against the City of Lyons, or the Western Light & Telephone Company, or anything like that, or the Southwest Bell; you are going to decide it on the evidence you heard from the witness stand and from the instructions as given to you by the court."

At the hearing on the motion for a new trial defendant called one Smith, an employee of a Lyons implement company, as a witness. Smith testified he was acquainted with jurors Schmidt and Miller and that he knew they had served on the jury. He further testified

that on the day following the conclusion of the trial Schmidt purchased some implement repairs from him, and that he, Smith, told Schmidt that he thought he would add twenty-five per cent to the purchase price "because you raised my taxes" in the Avery case against the city. Smith related his conversation with Schmidt, the substance of Schmidt's remarks being that "the jury didn't raise taxes," that it was the "stockholders" who were going to pay the judgment, and that "that is the way the judge told us." About a week later juror Miller came into the implement store and Smith made a similar remark to him about "taxes being raised" on account of the verdict in the Avery case, to which Miller replied that "the gas company was stockholders."

Defendant also called as a witness one Brunk, who had served on the jury, and he testified as to discussion in the jury room of the question whether defendant city was composed of "taxpayers, stockholders, or what."

In opposition to this line of testimony plaintiffs called jurors Schmidt and Miller to testify on the matter. Their version tended to show they regarded their conversations with Smith as "kidding" and that the court's remarks had not influenced their verdict.

Plaintiffs contend the entire matter was brought about by improper argument (which is not abstracted, however) on the part of defendant's counsel on the question of who would bear the burden of any judgment which might be rendered; that the remarks by the court were not erroneous under the circumstances, and, further, assuming they were improper, the matter amounted to "invited error" on the part of defendant of which it may not now complain.

Despite the various contentions made, and attempts to minimize the matter, we are of the opinion that in view of all of the circumstances, including the various questions in issue before the jury, the trial court's remarks concerning "stockholders," and so forth, whether they be considered as an "instruction" or a mere gratuitous statement, were erroneous, had no place in the lawsuit, in all probability were calculated to have an influence on the jury, and should not have been made.

This court is well aware of the fact that many things happen during a sharply contested trial and which, isolated and standing alone, may or may not be prejudicial error, depending on the circumstances of the particular case. Also, we recognize fully the general rule to the effect that mere technical errors are to be disregarded, and that

error, in order to be ground for reversal, must be such as to have prejudicially affected the substantial rights of the parties to an action. This was a sharply contested lawsuit and was a very "close" case. The questions of negligence, proximate cause, and defendant's liability, certainly were not free from doubt. We have made a careful study of the record and the various questions presented. Only a few have been discussed in detail. An examination of the entire record leads us to the conclusion it may not be said that defendant received the fair trial to which it was entitled.

The judgment is therefore reversed with directions to grant a new trial.