No. 45,672

JAMES J. KRAISINGER, *Appellee,* v. C. O. MAMMEL FOOD STORES (Respondent), and ALLIANCE MUTUAL CASUALTY COMPANY (Insurance Carrier), *Appellants.*

(457 P. 2d 678)

Opinion filed August 4, 1969.

*Thomas C. Boone,* of Hays, argued the cause and was on the brief for the appellants.

*J. Eugene Balloun,* of Great Bend, argued the cause, and *Lee Turner,* also of Great Bend, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the respondent and its insurance carrier from a judgment entered by the district court of Barton County, Kansas, for a lump sum award pursuant to K. S. A. 44-512a.

The only question is whether the respondent and its insurance carrier (defendants-appellants) failed to make full payment of compensation due after written demand was served pursuant to 44-512a, *supra.*

The matter was determined in the trial court on a motion for summary judgment (K. S. A. 60-256) filed on the ground that the pleadings and admissions on file disclosed there was no genuine issue as to any material fact. The claimant's motion recites that the admissions made by the respondent and insurance carrier establish negligence on the part of the respondent and its insurance carrier as a matter of law.

Where a matter is determined on a motion for summary judgment, if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, the judgment shall be rendered forthwith. (*West v. Prairie State Bank,* 200 Kan. 263, 436 P. 2d 402.) Furthermore, a pleading is to be liberally construed in favor of the party against whom the motion for summary judgment is directed. (*Price, Administrator v. Holmes,* 198 Kan. 100, 422 P. 2d 976.)

For purposes of the motion in this case the answer of the appellants and the exhibits attached thereto are admitted by the appellee as true. The pleadings on file, and the admissions of the claimant and of the respondent and its insurance carrier establish the following facts:

On the 7th day of March, 1968, an examiner's award of compensation was affirmed by the workmen's compensation director awarding the claimant, James J. Kraisinger (plaintiff-appellee) 35 weeks of temporary total disability at the rate of $42 per week, and 366 weeks of permanent partial disability at the rate of $40.99 for a total of $15,037.59, of which amount as of January 1, 1968, there was due

and owing $1,589.61. The remaining sum of $13,438.98 was ordered paid at the rate of $40.99 per week. The award further allowed medical, hospital, travel and per diem. Among these items was an entry:

"Central Kansas Medical Center ........ $75.00"

The respondent was also ordered to furnish "future medical expense not to exceed the sum of $6,000.00 less medical heretofore paid or ordered paid under the terms of" the award.

The Central Kansas Medical Center had rendered treatment to the claimant on two separate occasions. When claimant was hospitalized for treatment by Dr. C. R. Brown on December 5, 1966, and dismissed on December 17, 1966, the patient's file was marked "Compensation," and the billing of $356.50 was *voluntarily paid by the insurance carrier,* Alliance Mutual Casualty Company. The hearing on the claim for compensation filed with the Kansas workmen's compensation commission by the claimant was concluded by the examiner on the 20th day of July, 1967. The period of time the matter was before the examiner included the above noted hospitalization at the Central Kansas Medical Center. Subsequently, from August 31, 1967, through October 3, 1967, the claimant was treated as an outpatient at the Central Kansas Medical Center at the request of Dr. C. R. Brown for additional treatment. This billing of the medical center in the amount of $75 was sent directly to the claimant, and since the evidence in the compensation case had been completed and the case had been submitted to the examiner for decision on August 15, 1967, the attorneys of record for the claimant under date of September 30, 1967, sent the billing charge for $75 to the examiner for inclusion in the award. A copy of this correspondence was forwarded directly to the attorney of record for the respondent and its insurance carrier, Thomas C. Boone, Hays, Kansas. This letter dated September 30, 1967, addressed to the examiner, stated in part:

"There is also an unpaid balance at the Central Kansas Medical Center for physical therapy treatments over the past several months, and we request that this medical bill be ordered paid as a part of the award in this case."

Thomas C. Boone acknowledged receipt of a copy of this letter in an answer to request for admissions.

A second bill was received by the claimant for the same $75 charge of the Central Kansas Medical Center in November, 1967, since it remained unpaid. Thereupon claimant's attorney under date

of November 10, 1967, addressed additional correspondence to the examiner which read in part:

"As you know, this case was submitted to decision on August 14. Since that time, the claimant has received an additional bill from the Central Kansas Medical Center in the amount of $75.00 for physical therapy treatments.

"We are enclosing a copy of this statement, and request that payment of this statement be allowed as part of the award in this case."

A copy of this correspondence was also forwarded to the attorney of record for the respondent and its insurance carrier, Thomas C. Boone, and he admitted receiving the copy.

It is to be noted the $75 charge at the Central Kansas Medical Center was specifically itemized in the award of compensation.

After the award of compensation was affirmed by the director on the 7th day of March, 1968, Phyllis S. Linaweaver, an employee of the insurance carrier, Alliance Mutual Casualty Company, was directed by her superior, the service office manager, to make sure that all bills allowed in the award were paid. Phyllis S. Linaweaver in an affidavit filed with the answer stated:

". . . One of such bills was that of Central Kansas Medical Center, and the award was in the amount of $75.00. My records showed that the Alliance Mutual Casualty Co. had already paid the amount of $356.50 to the Central Kansas Medical Center, which was more than the award. To check on the amount and to find out if there was any outstanding balance with the medical center I did on March 13, 1968, telephone the Central Kansas Medical Center in Great Bend, Kansas, and spoke with the girl in the accounting or bookkeeping department.

"I do not know her name, but I was advised that *there was no outstanding bill against James J. Kraisinger under the workmen's compensation claim at that time;* she acknowledged the payment of the $356.50 previously paid to the Center.

"No bill has ever been sent to the Alliance Mutual Casualty Company by the Central Kansas Medical Center, or on their behalf, for $75.00 or any amount other than what was previously paid as stated above. I would have known of any such bill had it been sent. I assumed that since the $75 was not outstanding in the medical center bill, it was included in the amount we had paid." (Emphasis added.)

On the basis of such information the Alliance Mutual Casualty Company refrained from paying the $75 item.

After the award of compensation was affirmed by the director on March 7, 1968, counsel for the respondent and its insurance carrier wrote a letter to the attorneys for claimant under date of March 14, 1968, enclosing drafts specifically enumerated covering each item

of the award remaining unpaid, except the 75 item payable to the Central Kansas Medical Center. The letter then reads:

"The bill of Dr. Wallace Holderman has already been paid, as per our conversation with his office and bookkeeper; the Asbury Hospital bill has been paid; Dr. Findley Law's bill has already been paid; *the Central Kansas Medical Center's bill has already been paid in full.* The only outstanding medical bills, prior to receipt of these drafts, was Dr. Roy B. Coffey, Dorothy D. Martin and a balance of $20.00 to Dr. Reiff Brown.

"I have tried to carefully determine the amount of the medical expenses still due and owing for Mr. Kraisinger and I believe my computations are correct *because I have talked direct to each medical claimant involved.* If you do not agree with the drafts enclosed for medical attention and other expenses, feel free to get in touch with me. If you have any questions about the manner in which we computed the permanent partial, feel free to contact me, but I do believe that it is correct, as per the award." (Emphasis added.)

The letter concluded by requesting permission to make payments on a monthly basis rather than a weekly basis, if this was agreeable.

On the 18th day of March, 1968, Mr. Balloun, one of the attorneys for the claimant, answered the letter of Mr. Boone as follows:

"This will acknowledge receipt of your letter of March 14, 1968. *I have not had an opportunity to check to see whether or not the payments are correct.*

"However, concerning the last paragraph of your letter, the claimant has requested that the payments be made on the regular weekly basis, inasmuch as he is in need of his compensation.

"We appreciate your attention to this." (Emphasis added.)

As all items enumerated in the award had not been paid on June 26, 1968, demand was served in writing on the respondent and its insurance carrier and their attorneys of record "for payment of all compensation and all other obligations under the award recommended by the Workmen's Compensation Examiner on January 8, 1968, and approved and awarded by the Workmen's Compensation Director on March 7, 1968, in the above-captioned matter, all under the provisions of and in compliance with K. S. A. 44-512a."

The respondent and its insurance carrier admitted the foregoing demand for payment of all compensation on the 26th day of June, 1968, by a qualified answer as follows:

"Yes, the demand for payment was made but counsel for the plaintiff did not advise respondent and insurance carrier what bill was unpaid and that due to the peculiar circumstances of the way this matter was billed at the Central Kansas Medical Center, it was impossible for us to determine if there was any unpaid balance due at the time the award was rendered herein."

Since the charge of the Central Kansas Medical Center in the amount of $75 was still outstanding and unpaid on August 1, 1968,

a letter under that date was forwarded by the attorneys of record for claimant to the attorney of record for the respondent and its insurance carrier, reciting the nonpayment of the account and making demand for the entire balance of compensation due, thereby giving rise to this cause of action.

In the claimant's request for admissions the respondent and its insurance carrier were requested to admit that a copy of the attached bill for $75 from the Central Kansas Medical Center was received prior to the time demand for payment was made. They answered:

"We will admit that we were aware of the $75.00 claim which we believed, all pursuant to the Affidavit of Phyllis Linaweaver, was included in the total bill which was paid by the respondent and insurance carrier."

The first actual notice from the claimant subsequent to the award that the $75 item at the Central Kansas Medical Center was unpaid was on the 1st day of August, 1968, when counsel for the claimant notified counsel for the respondent and its insurance carrier of the $75 unpaid item.

After actual notice that the bill was in fact unpaid, on August 8, 1968, the Central Kansas Medical Center, by letter explained the reason why the insurance carrier was not able to learn of the outstanding bill on March 7, 1968. This letter addressed by Mrs. Reba Raleigh in the credit office at the Central Kansas Medical Center to the insurance carrier regarding the claimant reads as follows:

"Enclosed is a copy of both our paid and unpaid bills which are being sent pursuant to our recent telephone conversation.

"Regarding the unpaid bill—when a person receives hospital out-patient services, the only information the hospital office has relative to the responsibility for payment is that originally furnished by the department rendering the service. When Mr. Kraisinger received the therapy treatments, for some reason this was not noted by the employees in the therapy department as being covered by compensation. As a result his bill was marked 'personal' and was not placed in the workmen's compensation account file. Therefore when your representative telephoned this hospital regarding outstanding bills, the clerk who checked did not find an unpaid account for this patient in the workmen's compensation accounts.

"Eventually we learned this bill was to be covered by workmen's compensation when the patient's attorney called us to that effect. This call was in response to the last statement which we sent to the patient.

"We regret the circumstances which has caused this confusion but would appreciate your cooperation in paying this account."

This letter and the affidavit of Phyllis S. Linaweaver were filed as exhibits to the answer of the respondent and its insurance carrier.

On the 9th day of August, 1968, the insurance carrier paid the Central Kansas Medical Center $75 by check to cover this medical bill for James J. Kraisinger.

Upon the filing of the claimant's petition for a lump sum judgment, the matter was submitted to the trial court on a motion for summary judgment as heretofore stated, and on the 10th day of January, 1969, the court decided the matter in favor of the claimant. In its memorandum opinion the trial court said, among other things:

"There is no question that the award of the Examiner set out a bill due the Central Kansas Medical Center in the amount of $75.00; that prior to the award, the respondent and insurance carrier had paid to the Central Kansas Medical Center a bill in the amount of $356.50, which bill had been incurred by the claimant almost one year prior to the $75.00 bill.

"The evidence before the Court on Plaintiff's Motion for Summary Judgment consists of affidavit, other exhibits and admissions made on behalf of defendant in response to requests made by plaintiff's attorney.

"While the affidavit of one Phyllis S. Linaweaver and the exhibit consisting of a letter from the credit office of the Central Kansas Medical Center are persuasive in the defendant's favor, the answers of defendant to plaintiff's requested admissions are in the opinion of the court rather damaging to defendant's position. It is admitted by the defendant that copies of two letters were received dealing with the seventy-five dollar bill in question. These letters both addressed to the Workmen's Compensation Examiner with a carbon copy to the defendant's attorney are dated September 30, 1967 and November 10, 1967, respectively, and because of their importance are set forth in this Memorandum Decision:

[Letters heretofore quoted are omitted.]

"The provisions of K. S. A. 44-512a have been dealt with on numerous occasions by all concerned, making it unnecessary to set out its provisions. The provisions of this section are harsh and in the court's opinion place an unjust burden on the respondent and insurance carrier. In the application of this provision, however, as in all sections of the Workmen's Compensation Act, it must be construed liberally and in favor of the claimant. See *Hilyard v. Lohmann-Johnson Drilling Co.*, 168 Kan. 177, 211 P. 2d 89; *Palmer v. Fincke*, 122 Kan. 825, 253 Pac. 583, to name only several cases that have so held. There is no doubt in the Court's mind that the better practice in these cases should require claimant's attorney to divulge the payment claimed unpaid by respondent and insurance carrier. This is not the law, unfortunately, and the Supreme Court has not so interpreted this section.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"While the Court feels that the provision of 44-512a places an undue burden on the respondent and insurance carrier in all cases, as indicated in this memorandum and many times by our Supreme Court, it is not the claimant's

responsibility to furnish this information to respondent and insurance carrier this burden is theirs.

"Therefore, the Court must in this case find for the claimant, costs to be assessed to respondent and insurance carrier. . . ."

The foregoing order was to become effective when journalized. Prior to the filing of the journal entry (February 5, 1969) the respondent and its insurance carrier on the 14th day of January, 1969, moved to reopen for the purpose of introducing additional documentary evidence. The trial court granted this motion and permitted the respondent and its insurance carrier to introduce correspondence between Mr. Boone and Mr. Balloun dated March 14, 1968, and the reply thereto dated March 18, 1968, heretofore recited in the facts. This correspondence was admitted by the claimant, accepted as evidence, and considered by the trial court in ruling on the motion for summary judgment. On the 18th day of February, 1969, the trial court affirmed its prior decision, stating in its memorandum:

"The Court from reading the latest documents is impressed with the thoroughness of the defendants in attempting to make sure that all medical bills were paid. The fact remains, however, that a $75 medical bill was outstanding at the Central Kansas Medical Center of which the defendants had knowledge of, through various other exhibits referred to in the original Memorandum Decision of the Court. Under our law there was no duty on the part of the claimant or the plaintiff in a case of this nature based on K. S. A. 44-512a to reveal to the defendant the bills that are outstanding so long as bills are outstanding after a demand is made under provisions of this statute, judgment must be rendered."

The trial judge effectively summarized the facts and the issue presented by this appeal in the foregoing remarks quoted from the memorandum decisions.

This court has held and adheres to the rule that the "payment of compensation" includes furnishing and paying for medical treatment incurred by an injured employee covered by the workmen's compensation act.

A case similar to the instant appeal was before this court in *Owen v. Ready Made Buildings, Inc.,* 180 Kan. 286, 303 P. 2d 168. The question there presented was whether under 44-512a, *supra,* the employer's failure to pay within two weeks after the employee's written demand a part of the medical expense incurred in the treatment of the employee, and included in the award made to the employee by the workmen's compensation commissioner, accelerates

and makes the employer liable to pay the entire award. The court there held the furnishing of medical aid and hospitalization by an employer to an employee was payment of compensation as the term is used in the workmen's compensation act; and that:

"An award by the workmen's compensation commissioner, providing for the payment of certain medical expenses for the care and treatment of the injured employee, is an award of compensation to the injured workman, including all items that go to make up the award for the benefit of those named therein, to the same extent as an award for certain weekly payments of compensation made in his favor." (p. 288.)

The court there also considered whether failure on the part of the defendant to pay on demand the medical expense under an award was sufficient to accelerate and make the defendant liable to pay the entire award. After quoting 44-512a, *supra,* the court said:

"Under the plain language of the statute, a failure to pay *any* part of the compensation awarded, within two weeks after demand, authorizes the employee to bring a suit for all unpaid compensation awarded. The failure to pay, upon demand, the sum of $396 due Dr. Muller for medical treatment, being compensation and a part of the award, authorized the plaintiff to maintain this action for the unpaid compensation awarded. There is nothing in the act that indicates such a suit may be maintained, only in the event of failure to pay the weekly installments due the workman." (p. 289.)

K. S. A. 44-512a has been amended since the decision in the *Owen* case (180 Kan.) to extend the time for payment after the service of demand from two weeks to twenty days. On the facts in this case there was a failure on the part of the respondent and its insurance carrier to pay the $75 item to the medical center for a period of forty-four days, or more than six weeks, after serving the written demand.

But, on the admitted facts, was the $75 item specified in the award "due" the Central Kansas Medical Center within the contemplation of 44-512a, when service of written demand was made upon the respondent and its insurance carrier? For the reasons hereafter assigned the $75 item was not due in the eyes of the law when written demand was served pursuant to 44-512a, and the demand was ineffectual to accelerate payment of the entire amount of compensation awarded.

The claimant relies on *Owen v. Ready Made Buildings, Inc.,* 180 Kan. 286, 303 P. 2d 168, for the rules of law heretofore stated, and on a paragraph in *Criss v. Folger Drilling Co.,* 195 Kan. 552, 407 P. 2d 497, where the court made a statement concerning whose-

burden it was to determine the specific items remaining unpaid in a workmen's compensation award:

"It has also been held that 44-512a, *supra,* places the burden upon the respondent and its insurance carrier to determine what is due and payable where an award has been made ordering them to make payments. In *Miller v. Massman Construction Co.,* 171 Kan. 713, 237 P. 2d 373, the court held it was the respondent, not the claimant, who was responsible for the passage of time in which it might have paid the accrued compensation and avoided the statute under which the entire award became due. The court further stated it was the respondent and its insurance carrier that had the burden of avoiding the effects following the 44-512a demand, *and that neither the claimant nor his counsel was under any obligation to advise the respondent of the exact amount due."* (p. 555.) (Emphasis added.)

In *Criss* the court also reviewed *Owen v. Ready Made Buildings, Inc.,* 181 Kan. 659, 313 P. 2d 267, upon which the claimant relies, *but then distinguished the cases discussed by observing:*

"The foregoing decisions are indicative of the law as applied to the factual situations there confronting the court. In each of these cases the distinguishing characteristic is the fact that the respondent *knew* the actual amount of compensation awarded, *and that sums were due and payable under the award within the prescribed period from the demand."* (p. 555.) (Emphasis added.)

If, as our cases hold, "payment of compensation" includes furnishing and paying for medical treatment incurred by an injured employee covered by the workmen's compensation act, and an award of compensation to the injured workman includes all items that go to make up the award for the benefit of those named therein, to the same extent as an award for certain weekly payments of compensation made in the workman's favor, then the injured workman stands in the same shoes regarding the payment of compensation as the medical center which provides him service and is designated as a creditor in the compensation award for the amount due it. In other words, if the Central Kansas Medical Center has not been paid the $75 due it, which is a part of the compensation awarded, then the workman has not been paid compensation to that extent. On the other hand, if the Central Kansas Medical Center has been paid, then the workman has been paid compensation to that extent.

Now, if the workman stands in the same shoes as the Central Kansas Medical Center regarding payment of the $75 item in question, then an admission by the Central Kansas Medical Center, that there is no outstanding bill against the claimant under the

workmen's compensation claim, is equivalent to an admission that the $75 item has been paid. This admission is binding on the claimant and overrides other considerations, until such time as the Central Kansas Medical Center or the claimant notifies the respondent and its insurance carrier to the contrary—that it (the Central Kansas Medical Center) has made a mistake and corrects it to the satisfaction of the respondent and its insurance carrier.

Admissions against interest made by a party are the strongest kind of evidence and override other factors. (*Hiniger v. Judy*, 194 Kan. 155, 165, 398 P. 2d 305; *Reeder v. Guaranteed Foods, Inc.*, 194 Kan. 386, 393, 399 P. 2d 822; and see *Green v. Higbee*, 176 Kan. 596, 272 P. 2d 1084; *Stewart v. Gas Service Company*, 252 F. Supp. 385 [D. Kan. 1966]; and K. S. A. 60-460 [g] and [h].)

Counsel for the claimant argue in their brief that the appellants "admit nonpayment of the medical bill as ordered in the award, but plead third party error as the cause for nonpayment." Here, however, the claimant and the Central Kansas Medical Center are on *the same side of the case*, and insofar as payment of the $75 item is concerned stand in the same shoes. They are bound as if they were one and the same party. Instead of being third party error, this is equivalent to being error on the part of the claimant himself.

Counsel for the claimant were fully aware of the foregoing situation because they devote several pages of claimant's brief to the proposition that this case involves solely a *factual issue* which the trial court determined adversely to the respondent and its insurance carrier. It is said in the claimant's brief: "This appeal is not based in any manner on any error by the trial court in its understanding of the law, but rather on the sole factual issue that its failure to pay the medical item was the result of a bookkeeping error by a third party."

The appeal herein presents a pure unadulterated question of law based upon uncontroverted facts *which the claimant has admitted by his motion for summary judgment*. The answer of the appellants fully set forth the facts heretofore disclosed. The answer was fully documented with six exhibits which the claimant admits by his motion to be true. These included the affidavit of Phyllis S. Linaweaver and the explanation of the Central Kansas Medical Center by letter dated August 8, 1968, which is the equivalent of claimant's admission of the mistake on his part that was previously

made reporting payment of the item. It is to be noted this explanation by the Central Kansas Medical Center was not made until the 8th day of August, 1968, which is after the 44-512a written demand was served and after the claimant made demand, after reciting nonpayment of the account, for the entire balance of compensation due. Apparently the explanation of the erroneous report of payment satisfied the respondent and its insurance carrier because payment of the $75 item was promptly made on the next day.

The point of law decided in *Criss v. Folger Drilling Co.*, supra, controls the factual situation presently before the court. There the attorney for the claimant had paid medical fees of Dr. Coffey, and the case arose because it was contended the failure of the respondent and its insurance carrier to pay Dr. Coffey, after serving the 44-512a demand, was sufficient after the lapse of twenty days to accelerate the award. The court held, however, that the sum of $50 was paid by counsel for the claimant and said:

".  .  .  Had the respondent made inquiry of Dr. Coffey concerning the charge for his services, he would have answered, as he did in his deposition, that he had been paid. And since the claimant did not pay for the services of Dr. Coffey, the claimant cannot urge that compensation awarded him for the services of his examining physician was due and payable when the 44-512a demand was served upon the respondent." (pp. 555, 556.)

Here the admission of payment of the $75 item by the Central Kansas Medical Center to the respondent and its insurance carrier is equivalent to an admission of payment by the claimant, which is analogous to the payment of the $50 item to Dr. Coffey by claimant's counsel in the *Criss* case. In both situations there was in the eyes of the law *nothing due* on the items in question when the 44-512a demand was served by the claimant.

As the record stands in this case, when the 44-512a demand letter was served upon the respondent, there was a *zero balance* owed at the Central Kansas Medical Center in the workmen's compensation claim of James J. Kraisinger as previously reported to the insurance carrier.

To pinpoint the obligation of the claimant in this case the facts will be highly summarized. The chronology of events is extremely important.

The respondent and insurance carrier paid $356.50 to the Central Kansas Medical Center voluntarily for services to the claimant prior to the entry of the award. The workmen's compensation award

did not include any of the items comprising this sum of $356.50, except insofar as it referred to "medical heretofore paid." It is true the expenses itemized in this bill were incurred approximately one year prior to the therapy treatments which comprised the $75 item, but the correspondence of September 30, 1967, and November 10, 1967, were *prior* to the approval of the award by the workmen's compensation director which included the $75 item.

Upon approval of the award by the workmen's compensation director on the 7th day of March, 1968, *counsel for the respondent and insurance carrier immediately initiated correspondence with counsel for the claimant on the 14th day of March, 1968, making payment of all unpaid items in the award, and specifically calling attention of the claimant and his counsel to the fact that the Central Kansas Medical Center's bill had already been paid in full.* This was based upon the admission of the Central Kansas Medical Center to the Alliance Mutual Casualty Company that the item had been paid.

If this information was incorrect counsel for the respondent and its insurance carrier requested clarification, but no clarification was forthcoming. Instead, counsel for the claimant evasively answered "I have not had an opportunity to check to see whether or not the payments are correct."

Under the circumstances presented by the facts in this case, counsel for the claimant was obligated *at that time* to inform counsel for the respondent and its insurance carrier of the mistake.

Further opportunity was given to correct the mistake by notifying counsel for the respondent and its insurance carrier when the 44-512a demand was filed on the 26th day of June, 1968. But again nothing was said by counsel for the claimant and sufficient time had elapsed since the March 18, 1968, letter to check the accuracy of the payments. In fact, counsel for the claimant knew of the error or the 512a demand letter would not have issued. Counsel for the claimant requested the Central Kansas Medical Center to correct its records in response to the last statement (date not indicated) mailed to claimant.

Simply stated, the respondent and its insurance carrier were misled by a statement from the Central Kansas Medical Center, which was equivalent to an admission of payment of the $75 item. As such, the admission is binding on the claimant who stands in the same shoes as the Central Kansas Medical Center. Under these

circumstances the claimant has the affirmative duty to correct the mistake by actual notice and satisfactory explanation to the respondent and its insurance carrier, before he can issue an effective 512a demand to lay the foundation for acceleration of the compensation awarded for nonpayment of the $75 item.

It is an exercise in futility to say the workmen's compensation act shall be liberally construed in favor of the workman in the 44-512a situation here presented. Is it the purpose of the act to give the workman a lump sum award and mold the law to support such conclusion? To answer this question, one must ascertain the real purpose of the workmen's compensation act. The basic purpose of the act is to shift the burden of injury to workmen occasioned in the course of employment upon industry. To accomplish this purpose the act provides an orderly procedure for the determination of compensation due which is made payable *throughout a period of time which theoretically corresponds with the period of the workman's disability*—when his earning capacity by reason of injury received in employment is impaired.

Now, when it is said the workmen's compensation act shall be liberally construed in favor of the workman, is one to look to this legislative purpose of the act, or must one assume it is the purpose of the workmen's compensation act to see that the workman gets *all of his compensation in one lump sum?* Workmen and their families are accustomed to live on their earnings from pay day to pay day. To force a lump sum payment of the award cannot be the purpose of the act; 44-512a is remedial in character and designed to enforce the overall purpose of the act. (*Owen v. Ready Made Buildings, Inc.,* 181 Kan. 659, 313 P. 2d 267; and *Teague v. George,* 188 Kan. 809, 815, 365 P. 2d 1087.)

In 101 C. J. S., Workmen's Compensation, § 841, it is said under "Commutation of Award:"

"It is not the purpose of such provision to destroy the general scheme of the compensation act of establishing periodical payments and to permit the commission in every instance to commute periodical payments into a lump sum payment. Rather it is the purpose to provide for particular and exceptional cases. The exception must be in the interest of justice, and should not depend on the whim or caprice of claimant or the employer, or on an arbitrary ruling of the commission. Each case should be considered by itself. . . ." (p. 167.)

By analogy, it is not the purpose of 44-512a to destroy the general scheme of the workmen's compensation act of establishing periodical payments.

The judgment of the lower court is reversed.

FATZER, J., dissenting: The court has ignored the express provisions of K. S. A. 44-512a and a uniform course of decisions established by at least a dozen cases, including two by which the very claim now sustained was unanimously rejected shortly after the statute was enacted in 1943. (*Owen v. Ready Made Buildings, Inc.*, 180 Kan. 286, 303 P. 2d 168; 181 Kan. 659, 313 P. 2d 267.) The impressive body of rulings thus ignored reflected the legislative intent of the statute that compensation awards shall be promptly paid, and applies to all awards without the slightest qualification. (*Miller v. Massman Construction Co.*, 171 Kan. 713, 237 P. 2d 373.) Such a massive repudiation of our decisions is without precedent, but it made possible by the assertion of a new and doctrinary concept of when an award of compensation is due "in the eyes of the law." Such a concept is not to be found in the statute or in our decisions, and amounts to nothing less than legislation by judicial fiat.

I am at loss to understand the court's utter disregard of the plain language of 44-512a, and a reversal of this case is profoundly ill-advised and judicially impermissible. The court admits the $75 item allowed to the Medical Center was specifically itemized in the examiner's compensation award and ordered paid on January 8, 1968, which award was approved by the director upon the respondent and its insurance carrier's written request for a review. (K. S. A. 44-551.) No appeal was taken from the director's award. The court further admits that the respondent and its insurance carrier, as well as its counsel, were fully aware that the $75 item for physical therapy to the claimant's back was incurred at least one year *after* the insurance carrier paid the medical expenses for treatment in 1966 in the amount of $356.50. The court further admits the respondent and its insurance carrier failed and refused to pay the $75 item within twenty days after service of the claimant's written demand. Those facts should affirm this case. The pertinent provisions of 44-512a read:

"That if *any* compensation *awarded* . . . or any installment thereof *shall not be paid* . . . *when due,* and . . . *payment of said demand*

*is thereafter either refused or not made . . . then the entire amount . . . shall become immediately due and payable* and said employee . . . may maintain an action . . . for the collection thereof in like manner as for the collection of a debt." (Emphasis supplied.)

The real key to why the court has gone astray in this case is to be found in the last sentence of paragraph 3 of the syllabus and the corresponding portion of the opinion. There the court reveals it is not really trying to apply the provisions of 44-512a to the unpaid medical award in this case, but is announcing instead its new concept of when payment of an award of compensation is due "in the eyes of the law." The court does not elaborate on its new doctrine, nor does it indicate how far—and how unwisely— it intends to stray from appropriate judicial bounds of the statute. In applying the concept, the court simply concludes the $75 item was not due "in the eyes of the law" when the written demand was served and was not effectual to accelerate payment of the entire amount of compensation awarded the claimant. The court's conclusion in this case has thrown the law of this state into a demoralizing state of uncertainty.

The major portion of the court's opinion is devoted to setting forth the respondent and its insurance carrier's ingenious attempt to shift full responsibility to the accounting procedures of the Medical Center and their erroneous assumption of confusion in credits and balances with respect to the claimant's medical account. Under the statute, the respondent's guideline was the *award itself,* and it is new law to say that a third party's alleged error can get a respondent's insurance carrier "off the hook." Be that as it may, had the court looked further, it would have found the insurance carrier's own records disclosed it owed the $75 item set forth in the award and that the item had not been paid. The insurance carrier's fallacious position has contributed in a large measure to its own predicament, and I cannot conceive how the court can justify its conclusion by assuming that a payment made *before the $75 item was ever incurred* constituted a defense "in the eyes of the law."

As indicated, the very claim now sustained was unanimously rejected in *Owen v. Ready Made Buildings, Inc.,* 181 Kan. 659, 313 P. 2d 267. There the respondent contended as a *legal excuse* for failure to make payment of an award for medical expenses, the following: that payment was not refused but was delayed *without cause* due to confusion of credits and balances of the amount

awarded the doctor. The respondent elected to disregard entirely the demand for payment of the unpaid compensation and, as here, made no attempt to pay the balance of the award within the two-weeks period (now twenty days). The opinion cites the *Miller* case, and states that the burden of avoiding the effects following a written demand made in accordance with the terms of the statute was upon the employer and not the employee. It was further contended that the provisions of 44-512a should be construed as contemplating the phrase "payment of said demand, is either refused or not made" as meaning "payment of said demand is refused or *without cause* is not made." The contention was rejected, and it was said:

". . . *We think such a construction would read into the statute something that is not there.* Even so there is no necessity for laboring the point. The answer to this contention appears in syllabus 3 and corresponding portions of the opinion (p. 289) where it is held and said that a failure to pay any part of the compensation awarded when due, including medical expenses, within two weeks from the date of service of the written demand, makes the entire amount of compensation awarded immediately due and payable." (Emphasis supplied.) (l. c. 665.)

It is unnecessary to cite our many cases construing 44-512a. They may be found under the appropriate section of Kansas Statutes Annotated. They are to the effect, without deviation, that the provisions of the statute are remedial in character and deprive the employer and his insurance carrier of no vested rights; that they supplement existing remedies made available to the workman and give him the right to maintain, and a court the power to hear and determine an action commenced to enforce payment; that the burden of avoiding effects following service of a written demand is upon the employer and his insurance carrier and not the workman, and that it is no defense payment was delayed *without cause* due to an alleged bookkeeping error of a third party.

I would affirm the judgment of the district court.

O'Connor, J., joins in the foregoing dissent.