No. 91,748

THE CITY OF WICHITA, KANSAS, A Municipal Corporation, *Appellant*, v. SEALPAK COMPANY, INC, *Appellee*.

112 P.3d 125

Opinion filed June 3, 2005.

*David M. Rapp,* of Hinkle Elkouri Law Firm L.L.C., of Wichita, argued the cause, and *Roger M. Theis,* of the same firm, was with him on the briefs for appellant.

*Stephen E. Robison,* of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *Phillip S. Mellor* and *Lyndon W. Vix,* of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: In 2002 the City of Wichita (City) acquired real property owned by Sealpak Company, Inc., (Sealpak) through condemnation. The City appeals the district court's exclusion from evidence of a statement made by Sealpak's owner in a 2000 property tax appeal concerning the value of Sealpak's land. Our jurisdiction arises under K.S.A. 26-504, which allows direct appeals to the Supreme Court from any final order in an eminent domain proceeding.

The sole issue on appeal is whether the district court erred in excluding Smith's statements. Because we hold that the court committed reversible error, we remand for a new trial.

## FACTS

Sealpak is a producer of polysulfide sealants, which are primarily used to seal aircraft wings and other parts. On May 7, 2002, the City filed a petition to acquire Sealpak's real property through condemnation under the Kansas Eminent Domain Procedure Act, K.S.A. 26-501 *et seq.* Pursuant to K.S.A. 26-504, the district court appointed three appraisers who later valued the property at $450,000. On September 23, 2002, the City acquired Sealpak's property.

Sealpak appealed the appraisers' award to the district court. According to the pretrial order, the sole issue was "the amount of just compensation, *i.e.*, the fair market value of the real property taken, by condemnation at the time of the taking." Prior to trial, the City filed a motion in limine to exclude evidence regarding Sealpak's unwillingness to sell and the cause of prior flooding of Sealpak's property. Sealpak filed its own motion in limine to exclude evidence about any property tax assessment or purported appraisals by Sedgwick County for tax purposes. The City opposed this motion, particularly as it would exclude a statement made in March 2000 by Sealpak's owner, Donald Smith, that the value of the property was only $150,000.

The district court granted Sealpak's motion.

Prior to voir dire, the court heard the City's proffer of evidence. The only proffered witness was Smith, who stated that Sealpak had paid $28,000 for the land and spent another $315,000 to construct the building in 1970, for a total cost of $343,000. Sealpak had experienced considerable flooding problems with its building, which he believed that the City had caused. Smith acknowledged, however, that Sealpak had unsuccessfully sued in 1994, claiming the City had caused the flooding.

Smith also testified during the proffer that the county tax valuation for the property had been approximately $150,000 for several years prior to 2000. He stated that in 2000, he had received a notice from the Sedgwick County Appraiser's Office indicating that the appraised value was now $185,560. Smith appealed. On the appraiser office's form he marked as the reason for appeal "Value is

over market value," and on the line stating "Owner's opinion of value" he stated, "$150,000." His information was signed and dated March 22, 2000. Smith believed that the 2000 tax valuation should remain at $150,000 because of the flooding conditions. He later attended a hearing before the County Appraiser and again opined that the property value was $150,000. The County then lowered the valuation to $152,790.

Smith further proffered that at trial he would testify the fair market value of the property was $1.1 million. He admitted that no improvements had been made between his appeal dated March 2000 and the taking in September 2002. At the end of the City's proffer, the court reiterated that the evidence was not admissible.

At trial, the jury was presented with four property valuations. At the high end was Smith's. He added his total land value of $444,312 ($2 per square foot) to a general contractor witness' estimate of building replacement value less depreciation ($658,417), for a total of $1,102,729.

The next highest appraisal came from Sealpak's expert, F. Lee Jones, a real estate appraiser. He used the market comparison approach and the cost approach to conclude the property was worth $850,000.

The next highest appraisal came from Grant Tidemann, a commercial real estate broker who had served as one of the three court-appointed appraisers. In testifying for the City, Tidemann used replacement cost as his standard and concluded that the property was worth $450,000.

The lowest appraisal in evidence came from Bernie Shaner, a real estate appraiser who testified for the City. Like Jones, he used both market comparison and the cost approaches; he concluded the property was worth $390,000.

The jury found that the value of the land on the date of the taking, September 23, 2002, was $712,500. Judgment was entered for Sealpak in the amount of $262,500, the difference between the jury's verdict and the amount previously paid by the City pursuant to the appraisers' award, plus interest. The City appealed.

## ANALYSIS

Issue 1: *Did the district court err in excluding evidence of state-*

*ments regarding the valuation of property made by the property's owner during a property tax appeal?*

Our first consideration when examining appellate challenges to a district court's exclusion of evidence is relevance. See *State v. Carter,* 278 Kan. 74, 77, 91 P.3d 1162 (2004). Generally, all relevant evidence is admissible. K.S.A. 60-407(f); *State v. Meeks,* 277 Kan. 609, 618, 88 P.3d 789 (2004). Relevant evidence is defined as "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b).

It is well settled that a landowner is a competent witness to testify as to the value of his or her property. *City of Wichita v. Chapman,* 214 Kan. 575, 580, 521 P.2d 589 (1974). Accordingly, there can be no doubt that a landowner's opinion of his or her property value is relevant in an eminent domain action in which the sole issue is fair market value of the taken property. See K.S.A. 26-513(b) (If the entire tract of land is taken in an eminent domain proceeding, the measure of compensation is the fair market value of the property at the time of the taking.).

For the same reason, out-of-court statements made by the owner which are inconsistent with his or her valuation position at trial are relevant and can be admissible as admissions against him or her. See 5 Nichols on Eminent Domain § 18.12[1] (3d ed. 2003); K.S.A. 2004 Supp. 60-460(g) (admissions by parties); *L. & W. Rly. Co. v. Butts,* 40 Kan. 159, 19 Pac. 625 (1888). Indeed, this court has held: "Admissions against interest made by a party are the strongest kind of evidence and override other factors. [Citations omitted.]" *Kraisinger v. C.O. Mammel Food Stores,* 203 Kan. 976, 986, 457 P.2d 678 (1969).

According to Gard & Casad's Kansas Code of Civil Procedure (4th ed.), K.S.A. 60-407 is our statutory acknowledgment of the "fundamental principle that the primary test of admissibility of evidence is its relevancy to the issue being investigated and *that the trier of fact should have all of the relevant evidence which is offered unless some overriding consideration of policy or expediency requires its exclusion.*" (Emphasis added.) 4 Gard & Casad's Kansas C. Civ. Proc. 4th Annot. § 60-407 (2003). In the instant case, we

therefore must review the reasons given by the district court for excluding from evidence otherwise relevant and admissible admissions against interest by a party, which we have held are "the strongest kind of evidence."

The district court explained its rationale for excluding Smith's statements of $150,000 in property value as follows:

"And then there's the defendant's motion which . . . has to do with the . . . evidence concerning the appraisal.

"And I've read the briefs in this case and I think I've already noted the distinctions between the cases cited by Mr. Robison [Sealpak's counsel] and the case cited by Mr. Rapp [City's counsel]. But there is one other distinguishing factor, which was the appraisal process was 2000 [where Smith opined the value was $150,000] — and the date for this [value at time of City's taking], I believe, is September of 2002. And nobody's told me if there's any evidence one way or the other that could account for any distinction or difference in value over that period of time, you know. . . . I can imagine what it would or would not be. But without you all having taken evidence or testimony or discovery on that, I agree, when the law says that, as a general rule, the appraisal should not come in. And I don't dispute the *Avery* [*v. City of Lyons,* 181 Kan. 670, 314 P.2d 307 (1957)] decision, however, under the facts and circumstances of this case, the defendant's motion *in limine* is going to be sustained."

When asked to clarify its ruling, the court stated, "The City's not going to be able to bring in either the '99 or 2000 appraisal, nor will they be able to bring in his statement of value at 150,000."

Sealpak had argued to the district court, and continues to argue on appeal, that Smith's opinion of the value of $150,000 was inadmissible because it was made in a property tax proceeding, citing *Mettee v. Urban Renewal Agency,* 213 Kan. 787, 518 P.2d 555 (1974). The City had responded, and continues to argue on appeal, that the statements were admissions by Sealpak and therefore admissible as an exception to the general rule, citing *Avery v. City of Lyons,* 181 Kan. 670, 314 P.2d 307 (1957). As noted, the district court reviewed both decisions before making its decision.

In *Mettee v. Urban Renewal Agency,* 213 Kan. 787, this court agreed with the district court's ruling that had excluded evidence of the tax assessed on the property at issue. "[A]ssessed valuation of property for tax purposes is not admissible to establish the value of the property." 213 Kan. at 789. The *Mettee* court quoted from

*Love v. Common School District,* 192 Kan. 780, Syl. ¶ 1, 391 P.2d 152 (1964): "An appraisal of real estate made by a third party not available for cross-examination is not admissible in evidence to establish the value of that property even though the figures from such appraisal be recorded on a document filed in a public office." As further support, the *Mettee* court quoted from 5 Nichols on Eminent Domain § 22.1 (3d ed.):

" 'It is almost everywhere the law that the value placed upon a parcel of land for the purposes of taxation by the assessors of the town in which it is situated is no evidence of its value for other than tax purposes.* This rule of exclusion has been applied in the determination of value in eminent domain proceedings. . . . The assessment is *res inter. alios acta,* and is inadmissible upon general principles of the law of evidence. *Such evidence has been rejected on the ground that the assessed value is based on a valuation for a different purpose, and that it represents an ex parte statement of the assessor which is not subject to cross-examination.* Although the assessment roll, considered as a public document, has been admitted in actions other than condemnation proceedings, as an exception to the hearsay rule, even as evidence of value, the rule of exclusion has been justified as a rule of practicality. Although the assessor is required to appraise the value of the property, it is an open secret that the assessment rarely approaches the true market value.' " (Emphasis added.) 213 Kan. at 788-89.

On the other hand, in *Avery v. City of Lyons,* 181 Kan. 670, this court held that it was error to exclude from evidence personal property tax-assessment sheets given to the county clerk by the owner of a store building later damaged by fire. Plaintiffs' assessment sheets revealed he had provided values considerably less than the values to which he testified at trial. The court acknowledged that property assessments rarely reflect the actual market value of the property and that the stock of merchandise may fluctuate from day to day. It nevertheless found that the evidence was admissible, citing 31 C.J.S., Evidence § 283; 20 Am. Jur., Evidence § 385; and several articles in the A.L.R. See 181 Kan. at 673-74. As in the instant case, the *Avery* court observed that the values at the time of the property destruction were directly and specifically in issue and that the tax assessment sheets had been signed and filed by one of the plaintiffs. 181 Kan. at 673.

The *Avery* and *Mettee* holdings can be reconciled as evidenced by an A.L.R. article cited by the *Avery* court titled "Valuation for

taxation purposes as admissible to show value for other purposes." It states:

> " 'Although, as previously indicated, assessed valuation, as such, is not generally admissible on the question of the value of property, an owner's valuation of his own property, or a valuation in which he has participated, for tax purposes, *is usually held admissible in proceedings other than tax proceedings where the value of the property is in issue, in most instances on the ground that the owner's valuation constitutes an admission against interest, where he seeks to establish a higher value for a purpose other than taxation.'* " 181 Kan. at 674 (citing 39 A.L.R.2d 209, p. 230).

5 Nichols on Eminent Domain § 18.12[1] (3d ed. 2003) is in accord:

> "Statements made by or attributable to the owner which are inconsistent with his valuation position at trial are admissible as admissions. They are thus considered exceptions to the hearsay rule of exclusion, and may be introduced by the condemning authority as substantive evidence of value.
>
> . . . .
>
> "Statements of the owner, which may become admissions  . . . [include]
>
> . . . .
>
> "(6) a statement made to the tax assessor that his property is not as valuable as the assessment."

In light of these authorities, we hold admissible the statements by defendant Sealpak's owner, in property tax proceedings, that the County's appraised value of $185,560 was "over market value" and that "Owner's opinion of value" in March 2000 was $150,000. More specifically, we reject *Mettee* and *Love* as inapplicable under our facts, *i.e.*, the excluded valuations at issue here were not made by third parties unavailable for cross-examination.

Because the evidence was relevant and otherwise admissible, and because the rule in *Mettee* and *Love* does not apply, other bases must exist to support exclusion. See 4 Gard & Casad's Kansas C. Civ. Proc. 4th Annot. § 60-407 (2003). Sealpak suggests that the district court exercised its discretion and excluded the evidence because the probative value of the admission was outweighed by the substantial prejudice it would cause to Sealpak. See K.S.A. 60-445; *State v. Dreiling*, 274 Kan. 518, 549, 54 P.3d 475 (2002). The district court, however, made no mention of this weighing as the basis for its ruling.

Moreover, while property improvements occurring between the two valuation times can be a basis for excluding the earlier valuation, see *Love v. Common School District,* 192 Kan. 780, the district court observed that no evidence of improvements had been presented. As stated previously, Smith had testified at the proffer hearing that no improvements had been made between March 2000 and September 2002. Accordingly, property improvements do not provide a valid basis for exclusion.

With no basis for the exclusion, the remaining determination is whether the exclusion was harmless or reversible error. Sealpak contends that for the City to receive a new trial, the City must show it was prejudiced. This rule is effectively set out in K.S.A. 60-261:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding *which does not affect the substantial rights of the parties.*" (Emphasis added.)

Here, the jury was presented with 2002 valuations of $1,100,000 by Smith; $850,000 by Jones; $450,000 by Tidemann; and $390,000 by Shaner. It was not allowed to hear the lowest valuation — $150,000 by Smith in 2000 — and found the value of the property to be $712,500. Had the jury been allowed to hear Smith's earlier valuation, his admission could have impacted the jury's deliberations. *Kraisinger v. C.O. Mammel Food Stores,* 203 Kan. at 986 (admissions against interest by a party are the strongest kind of evidence).

The jury could have found that Smith's widely varying opinions made him incredible and could have entirely discounted his testimony. See 5 Nichols Eminent Domain § 18.12[1] ("In addition to serving as substantive evidence of value, the owner's admissions may be tendered for impeachment purposes should the owner testify on the issue of valuation."); *Welton v. Iowa State Highway Com.,* 211 Iowa 625, 635, 233 N.W. 876 (1930) (out-of-court state-

ments by plaintiff of his farm value to the tax assessor, which contradict his testimony, are admissible and did affect his credibility).

Smith's lost credibility could also have affected the jury's view of the weight and credit to be given the testimony of his only other witness, an expert whom he had hired, whose appraisal was $400,000 greater than, and almost double that of, the next highest appraiser's valuation. See PIK Civ. 3d 102.20; PIK Civ. 3d 102.50 ("The testimony of experts is to be considered like any other testimony and is to be tried by the same tests, and should receive such weight and credit as the jury deems it entitled to, *when viewed in connection with all the other facts and circumstances*, and its weight and value are questions for the jury." [Emphasis added.]).

Even were the jury to actually consider Smith's low valuation along with all other evidence in formulating its verdict, problems still remain. Its $712,500 verdict was closer to Sealpak's two appraisals of $1,100,000 and $850,000 than the City's two appraisals of $450,000 and $390,000. A jury factoring in Smith's low evaluation most likely would render a verdict lower than the one rendered without it. In short, under these circumstances, we conclude "it would ignore human realities" to say that the valuation of $150,000 could not have affected the jury's verdict. *Love v. Common School District No. 28*, 192 Kan. at 784.

Similarly, in the pre-K.S.A. 60-261 case of *L. & W. Rly. Co. v. Butts*, 40 Kan. at 161, the court reversed and remanded for new trial a judgment for the landowner in a condemnation proceeding because of erroneous exclusion of his out-of-court statements to the appraisers. Although the landowner's testimony on value was "nearly the same" as other witnesses, it apparently was greater than what he had told the appraisers.

Accordingly, we hold that the failure to allow Smith's 2000 valuation into evidence affected the City's substantial rights.

Finally, the parties devoted considerable attention to what Smith would or would not be permitted to discuss as an explanation for his $150,000 valuation. Since his valuation is an admission against interest, he has the right to offer an explanation, including that prior flooding was the cause. See *Avery v. City of Lyons*, 181 Kan. at 673; *Raines v. Central States Fire Ins. Co.*, 136 Kan. 506, 508,

16 P.2d 485 (1932); 5 Nichols Eminent Domain § 18.12[1] (because an owner's admission against interest is not conclusive but, rather, constitutes substantive evidence of value, the owner is free to introduce evidence in explanation of the circumstances attending the admission).

Toward that end, concern has been expressed that Smith's testimony could lead to a "trial within a trial" regarding the flooding. We disagree. Smith is entitled to explain that his low valuation was based upon flooding problems. However, he is barred from blaming the City, as this issue was determined adversely to him and his company in the 1994 litigation.

Reversed and remanded for a new trial.

LOCKETT, J., Retired, assigned.