No. 95,468

HERBERT M. MOONEY and ENID G. MOONEY, *Appellants*, v. CITY OF OVERLAND PARK, KANSAS, A Municipal Corporation, *Appellee*.

(153 P.3d 1252)

Opinion filed March 23, 2007.

*Kurt S. Brack*, of Holbrook & Osborn, P.A., of Overland Park, argued the cause, and *M. Ellis Rainey, II*, of Rainey & Rainey, of Shawnee, was with him on the brief for appellants.

*Timothy P. Orrick*, of Foth & Orrick, L.L.P., of Overland Park, argued the cause, and *Renee M. Gurney*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Herbert M. Mooney and Enid G. Mooney (landowners) appeal the jury's determination of the value of their property which was taken by the City of Overland Park (City) via its eminent domain powers. The landowners challenge the district court's exclusion of their proffered testimony about a prior sale of a portion of their land and the court's admission of testimony about a prior appraisal. Finding no reversible error, we affirm.

The property at issue is a tract of land in Overland Park of approximately 1.02 acres, which was improved with a building used by the landowners to operate a specialized home electronics equipment business known as Accent Sound. The City took the property in September 2003 through a condemnation action.

Apparently in anticipation of the taking, landowners hired John Schmidt to appraise the value of their property. He opined the property should be valued at $700,000. Landowners submitted Schmidt's written appraisal to the court-appointed appraisers in the condemnation action. The court-appointed appraisers set the value of the condemned property at $615,000.

Landowners appealed the valuation issue to the district court, where they received a de novo jury trial. The landowners presented the expert testimony of F. Lee Jones, whose total appraised value for the property was $887,000. The City called two appraisers; Bernie Shaner valued the property at $535,000, while Arthur Donoho valued it at $615,000.

During his direct testimony, Herbert Mooney was not permitted to testify that, in 2001, landowners had sold a small tract in the corner of their property to Southwestern Bell Telephone Company for the installation of a DSL switch. Mooney proffered that Southwestern Bell had paid approximately $10.50 per square foot for the corner piece.

On cross-examination of Mooney, the City's counsel was permitted to elicit that landowners had previously retained Schmidt to appraise the property and that Schmidt's valuation was $700,000, as opposed to the landowners' trial expert opinion of $887,000. On redirect, Mooney testified as to the reasons that Schmidt's appraisal had undervalued the property.

The jury awarded the landowners $620,000. The landowners appeal, claiming evidentiary errors in the jury trial.

## EXCLUDED TESTIMONY

The landowners claim that the district court abused its discretion in excluding Herbert Mooney's testimony about the Southwestern Bell sale. Citing to *City of Wichita v. Sealpak Co.*, 279 Kan. 799, 802, 112 P.3d 125 (2005), they contend that Kansas law is well settled that a landowner is a competent witness to testify as to the value of his or her property in an eminent domain proceeding. Once a witness is qualified as an expert, the court cannot regulate the factors used by the expert or the mental process employed to reach a conclusion; those matters should be tested by cross-examination. See *City of Wichita v. Eisenring*, 269 Kan. 767, 778, 7 P.3d 1248 (2000). Accordingly, the landowners argue that Herbert Mooney should have been allowed to describe the prior sale in order to support his contention that the remaining land being condemned was worth $10.50 per square foot.

The City relies on precedent establishing the district court as a gatekeeper for the admission of comparable sales evidence, investing the district court with discretion to look at "the factors of whether the sale was bona fide, voluntary, not too remote in point of time, and if the conditions of the property and surrounding area were sufficiently similar to those on the date of the taking [of the condemned property]." *Consultation, Inc. v. City of Lawrence*, 5 Kan. App. 2d 486, 488, 619 P.2d 150 (1980), *rev. denied* 229 Kan. 669 (1981). The district court "has broad discretion in determining what evidence will be allowed in an eminent domain proceeding." *U.S.D. No. 464 v. Porter*, 234 Kan. 690, 694, 676 P.2d 84 (1984). In essence, the initial district court inquiry is simply a determination as to the *relevance* of the proffered comparable sales evidence.

> "Generally, when considering a challenge to a district judge's admission of evidence, an appellate court must first consider relevance. Unless prohibited by statute, constitutional provision, or court decision, all relevant evidence is admissible. K.S.A. 60-407(f). Evidence is relevant if it has any tendency in reason to prove any material fact. K.S.A. 60-401(b). To establish relevance, there must be some material or logical connection between the asserted facts and the inference or result they are intended to establish. [Citation omitted].
>
> "Once relevance is established, evidentiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district judge's discretion, depending on the contours of the rule in question. [Citation omitted]." *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 (2006).

Here, the City defends the district court's decision to exclude the testimony on two bases: (1) the small corner piece sold to Southwestern Bell was too dissimilar to the 1.02 acres, improved tract being condemned; and (2) the sale was not a voluntary, arm's length transaction because Southwestern Bell had the power of eminent domain. The parties' arguments on these points invite a commonsense analysis of relevance. See *First Savings Bank v. Frey*, 29 Kan. App. 2d 436, 440, 27 P.3d 934 (2001) ("The determination of relevancy is a matter of logic and experience, not a matter of law.").

Taking the City's arguments in reverse order, we reject the contention that the sale was disqualified because of Southwestern Bell's power of eminent domain. Granted, the general rule is that a sale of land subject to condemnation by the purchaser but which is transferred by private sale and deed cannot be used as comparable sale evidence. See *Rostine v. City of Hutchinson*, 219 Kan. 320, 329, 548 P.2d 756 (1976); *Searcy v. State Highway Comm.*, 145 Kan. 709, 711-12, 67 P.2d 534 (1937). Nevertheless, that rule is inapplicable where the evidence is such as to indicate that an arm's length transaction occurred. See *Cain v. City of Topeka*, 4 Kan. App. 2d 192, 194-95, 603 P.2d 1031 (1979), *rev. denied* 227 Kan. 927 (1980).

The City appears to suggest that the very existence of the purchaser's power of eminent domain indicates a real possibility that the buyer will pay more to obtain land than it is worth. The invalid logic of that suggestion can be illustrated as follows: An entity with the power of eminent domain is one that can legally condemn and

obtain land at its fair market value; Southwestern Bell is an entity possessing the power of eminent domain; therefore, Southwestern Bell is an entity that will obtain land by paying *more* than its fair market value. Obviously, one can perceive that occasionally an entity may weigh the cost of an eminent domain proceeding against increasing its offer to entice a voluntary sale. Nevertheless, it is counterintuitive to suggest that the possession of the power of eminent domain invariably leads to an inflated purchase price.

More importantly, the only evidence in the record indicates that the possibility of condemnation was not a factor in the Southwestern Bell sale. In the landowners' proffer, their attorney specifically said that there was no compulsion to sell and the purchaser did not threaten to employ its power of eminent domain, but rather that "it was an outright transaction for $10.50 a square foot." At oral argument, the City conceded that there was nothing in the record to suggest that the landowners were even aware that Southwestern Bell possessed the power to condemn their property. Indeed, the district court did not rely on a lack of bona fides in excluding the evidence.

We perceive that the district court found the small, unimproved corner tract sold to Southwestern Bell to be so dissimilar to the large, improved tract being condemned, that the sale "was not relevant enough to get into it." We agree.

The landowners contend that the amount they were willing to voluntarily accept for the previously excised portion of their property, *i.e.*, $10.50 per square foot, is indicative of what they would voluntarily accept for the remaining 44,431 square feet of land being condemned. While there may be some material or logical connection between the prior sale and the current value of the *land*, the question for the jury was the value of the land *and* improvements, including the building.

Accepting the landowners' figures, 44,431 square feet of land at $10.50 per square foot yields a land value of $466,525.50. Neither the landowners' proffer nor their brief on appeal explains how that land value is relevant to their contention that the jury's award of $620,000 was inadequate. Pointedly, landowners do not translate

their estimate of land value into a final, total value of the property as a whole.

Landowners argue that the prior sale evidence was crucial to bolster their expert's opinion that the land was worth $12.50 per square foot and to refute the land value assigned by the City's experts, *i.e.*, $3.50 and $6.00 per square foot, respectively. That simplistic argument is misleading.

Each of the experts testified about the three commonly used approaches to the valuation of property. In the cost approach, the appraiser assigns a value to the land based upon comparable land sales in the area. Then, the cost to build the structure on the property is calculated and depreciation is deducted to arrive at the current value of the building. The sum of the land value and the depreciated building value yields the total value under the cost approach method.

Under the market or sales approach, the appraiser looks at sales of comparable properties in the area to arrive at a total value of the improved property. The income method utilizes a formula to capitalize the fair rental value of the property being appraised. Neither the sales approach nor the income method involves the assignment of a separate value to the land.

Interestingly, none of the three experts used their calculated cost method value as their final opinion of the fair market value of the landowners' property. For instance, the landowners' expert, utilizing $12.50 per square foot land value, arrived at a cost method value of $1,022,000. Yet, that expert utilized the market or sales approach to offer his opinion to the jury that the property was worth $887,000 for condemnation purposes. In that context, where a separate land value was not part of the calculus, the Southwestern Bell sale had no material or logical connection to the fair market value of the property as a whole, *i.e.*, was not relevant.

Even if one were to stretch the concept of relevance, the district court did not abuse its discretion in excluding the testimony. "[E]xpert testimony must be helpful to the jury." *State v. Heath*, 264 Kan. 557, Syl. ¶ 5, 957 P.2d 449 (1998). It is difficult to fathom what the jury was supposed to do with the proffered information, given that the other appraisers did not directly arrive at their final

fair market value opinion using a separate land value. The district court did not err.

## ADMITTED TESTIMONY

In ruling on the landowners' motion in limine to exclude any mention of the valuation opinion of their first appraiser, Schmidt, the district court found that the opinion could be admitted as a statement against interest for impeachment purposes, but not as expert testimony. On appeal, landowners assert that the district court abused its discretion in allowing the testimony as to Schmidt's opinion of the property's value, because Schmidt was not identified as an expert in the eminent domain appeal. See K.S.A. 60-226(b)(6)(A). Also, they complain that Schmidt was not available for cross-examination. See K.S.A. 60-460(a).

The landowners acknowledge that we have previously said: " 'Statements made by or attributable to the owner which are inconsistent with his valuation position at trial are admissible as admissions. They are thus considered exceptions to the hearsay rule of exclusion, and may be introduced by the condemning authority as substantive evidence of value.' " *Sealpak*, 279 Kan. at 805 (quoting 5 Nichols on Eminent Domain § 18.12[1] [3d ed. 2003]).

The landowners attempt to distinguish the *Sealpak* holding by asserting that they did not personally testify that their property was worth $700,000. Rather, it was Schmidt who offered the valuation opinion, and it was their attorney who presented the written appraisal to the court-appointed appraisers. They point to cases which have held that appraisals made by a third party who is unavailable for cross-examination are inadmissible to establish the property's value. See *Mettee v. Urban Renewal Agency*, 213 Kan. 787, 789, 518 P.2d 555 (1974); *Love v. Common School District*, 192 Kan. 780, 784, 391 P.2d 152 (1964). However, *Mettee* and *Love* dealt with appraisals that were completely unrelated to the matter being litigated and that had not been adopted or proffered by the landowner.

We have no problem finding that Schmidt's written appraisal was a statement attributable to the Mooneys. When the owners of land subject to an eminent domain proceeding hire an appraiser

to assess the value of the condemned land and submit the ensuing written appraisal to the court-appointed appraisers, the valuation opinion is a statement attributable to the landowners which is admissible as an admission under K.S.A. 60-460(g) in a subsequent trial de novo in the eminent domain proceedings. The district court properly allowed the City to use Schmidt's valuation opinion in the cross-examination of the landowners.

Affirmed.