No. 109,018

In the Matter of the Acquisition of Property by Eminent Domain, UNIFIED SCHOOL DISTRICT NO. 365, ANDERSON COUNTY, STATE OF KANSAS, *Appellees*, v. DONALD D. DIEBOLT and SUSAN H. DIEBOLT, *Appellants*.

(320 P.3d 955)

Opinion filed March 21, 2014.

*Bret A. Heim*, of Immel, Works & Heim, P.A., of Iola, argued the cause and was on the brief for appellants.

*Lee H. Tetwiler*, of Law Office of Lee H. Tetwiler, of Paola, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

LUCKERT, J.: In a proceeding under the Eminent Domain Procedure Act, K.S.A. 2013 Supp. 26-501 *et seq.*, it is well established that an owner of the subject property may testify as to his or her opinion regarding the property's fair market value. Nevertheless, in *Manhattan Ice & Cold Storage v. City of Manhattan*, 294 Kan. 60, 74-76, 274 P.3d 609 (2012), and *Mooney v. City of Overland Park*, 283 Kan. 617, 619-20, 153 P.3d 1252 (2007), among other cases, this court recognized limits to the scope of a property owner's opinion testimony. Specifically, a property owner must base his or her opinion on matters that are relevant to the jury's determination of fair market value. And if the property owner is basing his or her opinion on the cost appraisal method, a foundation must be laid establishing the owner has the requisite expertise to perform the appraisal. In this case, the trial judge allowed a property owner, who did not have appraisal expertise, to express a valuation opinion but appropriately applied our caselaw and excluded testimony that was not relevant to the jury's determination and was beyond the owner's expertise. Consequently, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

The property at issue in this eminent domain proceeding is a 36.2-acre, unimproved tract of land in Anderson County. Property owners Donald and Susan Diebolt purchased the property for $250,000 in 2006 for the purpose of adding a Garnett location to their lumberyard business, but no improvements had been made to the property before Unified School District No. 365 initiated the condemnation.

After the school district filed its petition, the trial judge appointed three appraisers pursuant to K.S.A. 2013 Supp. 26-504, who valued the property at $278,800. The Diebolts appealed the appraisers' award and requested a jury trial.

*Pretrial*

During pretrial discovery, the school district deposed Donald Diebolt. Susan Diebolt was not deposed, nor did she testify at trial. In Diebolt's deposition, he opined that the subject property had a value of "a little under 432 thousand." Diebolt explained that he believed the fair market value of a tract of land is "what you have got in the land," and consequently he calculated the fair market value by totaling "[t]he purchase price plus the costs in the property" minus farm income over the 4.58 years he had owned the property. Diebolt provided a written itemization of those costs, which was marked as Deposition Exhibit 1. These costs included the purchase price, closing costs, loan processing fees, appraisal fees, interest, property taxes, attorney fees, insurance, a topographical site plan and survey, a market site analysis, building plans, and environmental fees. To the sum of these expenses, Diebolt added a 5 percent return on his investment. This sum was offset by farm income of $4,500 that had been received over the period of ownership. Diebolt's total accounting and valuation was $431,501.59. Diebolt also testified he did not have any knowledge or background in valuing real estate or the Uniform Standards of Professional Appraisal Practice.

Following Diebolt's deposition, citing *Manhattan Ice*, the school district filed a motion in limine in which it sought exclusion of:

"(a) Any testimony by Donald Diebolt as an expert witness in any capacity as to the fair market value of the property that is at issue in this case; and

"(b) Any testimony at all by Plaintiffs' sole witness, Donald Diebolt, as to how he arrived at his opinion of value with respect to the property that is the subject of this action."

At the pretrial hearing on the motion in limine, the trial judge ruled from the bench. Relying on *Manhattan Ice* as a guide, the judge first explained the scope of testimony he would allow, stating that Diebolt could testify to "whatever value he believes the property is worth." In addition, he could tell the jury the amount he and his wife paid to purchase the property, the reasons they bought the property, and the reasons they had surveys and a site analysis performed and site plans developed. The judge also delineated

evidence he would not allow: "[H]e's not going to be able to admit this Deposition Exhibit Number 1 or something similar to it at trial as some type of a cost analysis that he's done on his own to come up with valuation of the property. Several of the items that are included in there wouldn't be included in a cost analysis by any expert." In summarizing his ruling, the judge indicated the motion was being denied in part because he would allow Diebolt to testify as to one item on Deposition Exhibit 1—the amount the Diebolts had paid for the property. All of the other entries on Deposition Exhibit 1 were excluded.

Subsequently, a written order in limine was filed, which differed somewhat from the judge's oral rulings. In itemizing the testimony that would be allowed without further foundation, the order did not vary from the bench ruling, stating that Diebolt could testify "as to the purchase price of the property in question, when it was acquired, the purpose for which it was acquired, and their plans for the use of the property." The order then addressed Deposition Exhibit 1 and, in doing so, did not absolutely exclude the various costs. Instead, the judge allowed the admission of evidence regarding the topographical site plan, survey, market site analysis, and building plan if those who performed the work testified "concerning the work that was done by them and the value of this work." The order also explained: "[T]he evidence excluded by this ruling is not material or relevant to a determination of the value of the property." But the order made no mention of *Manhattan Ice*.

### Trial

At trial, Donald Diebolt was the property owners' only witness. He testified that he paid $250,000 for the subject property. He explained the tract of land was larger than necessary for his plans and more expensive than some other property on the market but, in his opinion, the property was worth the extra expense because it was a good location to build a Garnett facility for his business. A traffic count, market site analysis, environmental study, topographical surveys, conceptual building plans, and estimates of the cost of building a lumberyard on the site were completed, and those confirmed his belief regarding the property's fair market value.

Nevertheless, he had not acted on his plans to build because an economic downturn hit soon after he bought the property. Diebolt opined that the value of the subject property at the time of the trial was $432,000. He stated that he arrived at this value by calculating the "[c]ost flow to recreate what I've spent years doing."

The school district presented testimony from a real estate appraiser who valued the subject property as between $188,400 to $249,000, using the comparable sales method. The witness testified that the highest and best use of the property was public use or use as commercial property for development. He further testified that he did not know of any property in the state that had an 18 percent annual appreciation in value such as the increase Diebolt was suggesting had occurred during the time the Diebolts owned the subject property.

The jury returned a verdict of $249,000. The Diebolts timely filed this appeal, over which this court has jurisdiction pursuant to K.S.A. 2013 Supp. 26-504 (direct appeal to supreme court of any final order under the Eminent Domain Procedure Act).

### ISSUE PRESERVED

As a preliminary matter, the school district argues the Diebolts failed to make a proffer of the evidence they wished to have admitted and therefore failed to preserve the issue because they did not satisfy K.S.A. 60-405, which states:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

Compliance with K.S.A. 60-405 serves a two-fold purpose: It assures that (1) the trial judge is advised of the substance of the evidence and the nature of the parties' arguments and (2) an adequate record is made for appellate review. See *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 275, 225 P.3d 707 (2010) (proffer preserves issue for appeal and provides adequate record for appellate review); *State v. Deal*, 271 Kan. 483,

490, 23 P.3d 840 (2001) (purpose of making a proffer is to allow trial judge to make evidentiary decision based on substance of testimony), *overruled on other grounds by State v. Davis*, 283 Kan. 569, 158 P.3d 317 (2006).

The school district is correct that the Diebolts did not make a formal proffer at trial. Nevertheless, "[a] formal offer of proof in question and answer form is not required if an adequate record is made in a manner that discloses the evidence sought to be introduced." *State v. Evans*, 275 Kan. 95, 99, 62 P.3d 220 (2003). Past cases have recognized that such things as answers to discovery, arguments on a motion in limine, or in-court dialogue can fully set out the expected evidence and satisfy the requirements of K.S.A. 60-405. See, *e.g., Manhattan Ice*, 294 Kan. at 71 (interrogatory answers setting out substance of witnesses' testimony sufficient); *State v. Mays*, 254 Kan. 479, 486, 866 P.2d 1037 (1994) (sidebar conferences and statement of defendant made trial court sufficiently aware of information to be elicited and reasons why information was important to defense); *McGraw v. Sanders Co. Plumbing & Heating, Inc.*, 233 Kan. 766, 770, 667 P.2d 289 (1983) (argument on motion in limine and in-court dialogue fully set out appellant's position).

At the pretrial hearing in this case, the trial judge was provided a copy of Deposition Exhibit 1 and Diebolt's deposition testimony. The Diebolts' counsel discussed the contents of Deposition Exhibit 1, the market site analysis, site plan, and surveys conducted of the property and explained why those documents should be admitted. Further, the trial transcript reveals that the judge referred back to Deposition Exhibit 1, the deposition, and the parties' pretrial arguments when ruling on objections during Diebolt's testimony. The transcript also reveals that the judge was aware of the nature of the proof because he described the substance of the evidence when making his rulings during the trial. For example, during a sidebar conference after the school district objected to a question posed by the Diebolts' counsel, the judge indicated that Diebolt could testify that studies had been performed and the studies told him "that this would be a good place for a lumberyard." But the judge specified that Diebolt could only testify to his personal opin-

ion; he could not testify to the opinions of others that were included in the reports. This ruling reiterated the pretrial ruling that representatives of the entities preparing the reports would have to testify and lay the necessary foundation before a report or its cost could be admitted into evidence.

On appeal, the record includes the trial transcript, the motion in limine, and its attachments—the transcript of Diebolt's deposition and Deposition Exhibit 1. We also have the benefit of the judge's rulings, including the order that was very specific in listing those items in Deposition Exhibit 1 that could not be admitted into evidence and those that could be admitted if a foundation was laid.

We conclude the Diebolts made a record that was sufficient for the trial judge and the parties to fully understand the substance of the evidence at issue and to inform us of the details of the evidence that Diebolt would have liked to have admitted—the amounts of money he had spent over the years—in order to substantiate his opinion of the fair market value of his property.

### EVIDENCE PROPERLY EXCLUDED

Finding the issue preserved, we turn to an analysis of the question presented by the Diebolts, which they summarize in their brief by stating that "the order in limine issued by the trial court was unduly and improperly broad in scope and that its application resulted in the exclusion of relevant and material evidence that could have been utilized to effectively demonstrate [the Diebolts'] basis for their claims of property value to the jury."

*Relevant Principles of Law and Standards of Review*

The framing of this issue focuses us on the pretrial ruling on the motion in limine. In considering the merits of a motion in limine, a trial judge, just like an appellate court, applies a two-step analysis. One step focuses on whether a ruling should be made before trial; the Diebolts do not question this step of the analysis. The other step focuses on whether the evidence in question was admissible. This step, in turn, requires a four-step analysis in which the trial judge should (1) determine the evidence's relevance; (2) determine which rules of evidence or other principles apply; (3) apply those

rules and principles; and (4) weigh the probative value of the evidence against any prejudicial effect. On appeal, the standard of review for each step of the trial judge's analysis varies. See *State v. Shadden*, 290 Kan. 803, 816-19, 235 P.3d 436 (2010) (stating two factors for motion in limine analysis and four-step evidentiary analysis and discussing standards of review).

The Diebolts' argument relates to only the first step of the evidentiary analysis—whether the evidence was relevant. Specifically, they contend the trial judge erred in ruling that the costs incurred by the Diebolts as an incident of their ownership of the land were not relevant.

Any consideration of relevancy begins with K.S.A. 60-401(b), which defines relevant evidence as "evidence having any tendency in reason to prove any material fact." We have determined that this definition encompasses requirements that the evidence be both material and probative. "Evidence is material when the fact it supports is in dispute or in issue in the case and is probative when it has a logical tendency to prove a material fact." *State v. Lowrance*, 298 Kan. 274, 289, 312 P.3d 328 (2013). An appellate court reviews a trial judge's ruling regarding the materiality of evidence by applying a de novo standard and a ruling regarding the probative nature of the evidence under an abuse of discretion standard. *Shadden*, 290 Kan. at 817.

The school district's reply arguments raise questions under the second and third steps of the evidentiary analysis—determining which rules of evidence or other principles applied to the determination of whether the specific evidence was admissible and the application of those rules. See *Shadden*, 290 Kan. at 817. The school district relies on rules and caselaw regarding opinion testimony and argues that under application of those rules Diebolt was not qualified as an expert witness as necessary before he could offer his opinion that the various costs he had incurred were a component of fair market value.

K.S.A. 60-456 defines the criteria for lay and expert opinion testimony. The application of K.S.A. 60-456 is reviewed for an abuse of discretion. *Manhattan Ice*, 294 Kan. at 70 (citing *Pullen v. West*, 278 Kan. 183, 210-11, 92 P.3d 584 [2004]).

An abuse of discretion can occur in various ways. See *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012) (abuse of discretion can occur [1] if no reasonable person would have taken the view adopted by the trial court; [2] if the judicial action is based on an error of law; or [3] if the judicial action is based on an error of fact). When the issue is whether the trial judge properly viewed the probative nature of evidence or whether the trial judge erred in the application of K.S.A. 60-456, "[d]iscretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court." *Pullen*, 278 Kan. at 210-11.

## Property Owner's Opinion Testimony

Turning to the Diebolts' argument that the trial judge erred in excluding relevant evidence, we first examine materiality. To determine if evidence is material—that is, whether the evidence supports a matter that is in dispute or in issue in the case—it is necessary to examine the nature of the case and the elements that must be established for the plaintiff or petitioner to meet the burden of proof. This is easily determined in an eminent domain action because the only question for the jury is the measure of compensation that should be justly awarded an owner who is being deprived of his or her property. *Manhattan Ice*, 294 Kan. at 68; K.S.A. 2013 Supp. 26-508(a) ("The only issue to be determined [in the appeal] shall be the compensation required by K.S.A. 26-513."); see U.S. Const. Amend. 5 ("private property [shall not] be taken for public use, without just compensation").

K.S.A. 26-513(b) defines "the measure of compensation" when, as in this case, an entire tract of property is being taken as "the fair market value of the property or interest at the time of the taking." K.S.A. 26-513(e) defines "fair market value" as

"the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. The fair market value shall be determined by use of the comparable sales,

cost or capitalization of income appraisal methods or any combination of such methods."

In light of this provision, the issue of relevancy is whether the evidence relates to fair market value viewed through the lens of an arms-length transaction. *Mooney*, 283 Kan. at 619-20.

In general, as recognized in a long line of cases, a property owner's opinion as to the fair market value is deemed relevant to this determination. *Manhattan Ice*, 294 Kan. at 75; *Mooney*, 283 Kan. at 619; *City of Wichita v. Sealpak Co.*, 279 Kan. 799, 802, 112 P.3d 125 (2005); *City of Wichita v. Chapman*, 214 Kan. 575, 580, 521 P.2d 589 (1974); *Urban Renewal Agency v. Tate*, 196 Kan. 654, 657, 414 P.2d 28 (1966); *Taylor v. State Highway Commission*, 182 Kan. 397, Syl. 6, 320 P.2d 832 (1958); *Randle v. Kansas Turnpike Authority*, 181 Kan. 416, 420, 312 P.2d 235 (1957). The Diebolts rely on this principle as their primary authority and essentially argue that under this principle a property owner may testify to any matter that the property owner believes supports his or her opinion.

In response, the school district does not dispute the principle that a property owner's opinion of value is relevant, but it does dispute that the owner can testify to any matter that supports the owner's opinion, even a matter that is not an appropriate consideration. As to the relevance of an owner's opinion, the school district aptly points out that Diebolt was allowed to state his opinion of the property's fair market value. In fact, Diebolt not only stated his opinion, he explained that the value reflected a "[c]ost flow to recreate what I've spent years doing." He also explained his plan to build a lumberyard and the reasons the property was favorable for that purpose. He further itemized the various studies, analyses, surveys, and plans that confirmed "that this would be a good location to build a lumber yard." Under the trial judge's ruling, the Diebolts could have presented evidence regarding the substance of these studies if a foundation was laid by those who had performed the studies. On appeal before us, the Diebolts do not argue that the trial judge erred in requiring this foundation, nor do they suggest how they were prevented from laying the foundation and

presenting this evidence. They have thus waived any such arguments. See *State v. Holman,* 295 Kan. 116, 125, 284 P.3d 251 (2012) (issue not briefed is deemed waived and abandoned).

The school district further argues that the exclusion of the costs was not erroneous because Diebolt's method of valuation was inconsistent with K.S.A. 26-513(e) and a property owner should not be allowed to testify to matters that are not relevant to the valuation methods that can be considered by the jury. Our past cases support the school district's argument. For example, in *Mooney v. City of Overland Park,* 283 Kan. 617, 619-20, 153 P.3d 1252 (2007), this court held that a trial judge did not err in excluding a property owner's testimony regarding the prior sale of a small, unimproved tract of the subject property. Even though the owner asserted the sale was comparable and therefore relevant, this court affirmed the trial judge's ruling because there was no logical connection between the prior sale of unimproved land and the current value of the improved land. See *Miller v. Glacier Development Co.,* 284 Kan. 476, 486-93, 161 P.3d 730 (2007) (disallowing property owner's testimony regarding prior sale or purchase price of subject property because that prior value was not sufficiently related in time and circumstance to be relevant to the question of fair market value at the time of taking). Thus, while a comparable sale would be a material fact and an appropriate factor for the jury's consideration under K.S.A. 60-513(e), the evidence in those cases was not probative of a comparable sale.

Likewise, an owner's testimony can be excluded when it is based on factors that are unrelated to a recognized appraisal method. As one court has stated, while "[a]n owner of property may testify as to its value (without qualification as an expert), upon the assumption that he is particularly familiar with it," if the owner "has obviously determined [value] upon the application of an improper formula, his opinion fails to meet the test and, therefore, has no probative value." *State v. Larson,* 54 Wash. 2d 86, 88, 338 P.2d 135 (1959); see *DURA v. Hayutin,* 40 Colo. App. 559, 563, 583 P.2d 296 (1978) (as general rule an owner may state opinion of the reasonable market value of his or her own property without having to be qualified as an expert witness but "an owner's opinion is not

admissible where it is based upon improper considerations"); see generally 5 Nichols on Eminent Domain § 23.03 (3d ed. 2013) (admissibility of the owner's opinion).

As these authorities indicate, the Diebolts' suggestion that a property owner should be allowed to testify as to any matter that impacts his or her opinion is overly broad. A trial judge may determine that specific factors are either not material or not probative and therefore irrelevant.

Applying this concept in this case leads to the next question of whether the various factors relied on by Diebolt were relevant. By attempting to testify as to the various costs he incurred, it appears Diebolt's opinion was based on his own cost appraisal. A short discussion of the cost appraisal method, one of three accepted methods of valuation recognized in K.S.A. 26-513(e), is necessary to evaluate the question of whether these various costs were relevant. We begin with the general proposition that "[e]very element which affects value and which would influence a prudent purchaser should be considered" in an eminent domain proceeding. 4 Nichols on Eminent Domain § 12.01, p. 12-4 (3d ed. 2013). But not all costs incurred by a property owner affect the fair market value of the property. It is commonly recognized that the fair market value of *vacant or unimproved* property, such as the property at issue in this case, does not usually appreciate by the amount the seller has paid in loan fees, interest, property taxes, and other similar costs, and a prudent buyer would not be willing to reimburse the property owner for any and all expenses the property owner has incurred during his or her ownership of the property. In other words, "[m]arket value. . . is not equivalent to the amount expended for the property by the owner." 4 Nichols on Eminent Domain § 12B.11[1], p. 12B-70; see Appraisal Institute, The Appraisal of Real Estate, pp. 21-28 (13th ed. 2008) (distinguishing between "cost" and "value" and "market value," "investment value," "fair value," and "use value").

Instead, the cost appraisal method typically applies to land that is *improved*—not in a vacant state—and "allows for consideration of reproduction cost or replacement cost minus depreciation" of any improvements. 5 Nichols on Eminent Domain § 20.01, p 20-

1 to 20-2; see *Manhattan Ice & Cold Storage v. City of Manhattan*, 294 Kan. 60, 76, 274 P.3d 609 (2012). Generally, the cost appraisal method involves a three-step process. The first step applies to the land. Under this step, "the land is valued as if vacant and thus available to be valued at its highest and best use. This is generally accommodated by using comparable sales data." 5 Nichols on Eminent Domain § 20.03[3], p. 20-9; see *Mooney*, 283 Kan. at 622 (explaining cost appraisal method). Then, the reproduction or replacement cost of the structures or improvements is calculated and added to the land value. And finally, depreciation is deducted. 5 Nichols on Eminent Domain § 20.03[3], p. 20-9. In computing reproduction or replacement costs of improvements, some of the costs Diebolt itemized might, in certain situations, be included in the computation of reproduction or replacement costs. See 5 Nichols on Eminent Domain § 20.03[3], p. 20-10 (reproduction or replacement costs may include builder's overhead and profit and indirect costs such as professional fees, financing, interest, insurance, and taxes). But the treatise authors advise that "[a]n appraisal journal should be consulted for an in-depth coverage of these methods [for computing costs]." 5 Nichols on Eminent Domain § 20.03[3], p. 20-10.

As this discussion indicates, the valuation of land, even under the cost appraisal method, is not typically influenced by the owner's costs but is based on comparable sales, which is much like the standard for property values in the neighborhood—the basis for which we have said there is a foundation for an owner's lay opinion. And the Diebolts do not cite any authority suggesting an owners' cost approach is viable in this case where the land is unimproved. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013). As we have noted, an issue not briefed by the appellant is deemed waived and abandoned. *Holman*, 295 Kan. at 125. We conclude after our de novo review that many of the factors Diebolt relied on were not material to the jury determination of the property's fair market value.

Further, to the extent any of these considerations would be relevant under the cost appraisal method, this court's holding in *Manhattan Ice*, 294 Kan. at 76, prevents a lay property owner from testifying to an appraisal method for which he or she has not been established as an expert. In an effort to avoid the application of *Manhattan Ice*, the Diebolts attempt to distinguish it.

In *Manhattan Ice*, the corporate property owner's president was allowed to testify "to his own opinion of fair market value and, thus, just compensation: $15 million, with $10 million for improvements on the tracts and $5 million for the land." 294 Kan. at 76. The valuation of the improvements was based on a calculation of replacement value, a form of the cost appraisal method. But the trial judge would not allow the president to testify regarding various components of the replacement cost appraisal because the president was not qualified as an expert and because he was attempting to introduce hearsay evidence by testifying to the contents of reports from experts who had performed a replacement cost appraisal. This court affirmed that ruling. 294 Kan. at 76.

In doing so, this court cited to a previous case, *City of Wichita v. May's Company, Inc.*, 212 Kan. 153, 155, 510 P.2d 184 (1973), in which this court explained:

"The foundation [for a landowner's testimony regarding the value of his or her land] should consist of knowledge developed from a buying and selling of real estate or an acquaintanceship and familiarity with land values in the neighborhood. The qualification of a landowner to testify as to the value of his land is not dependent on a showing of a knowledgeable background. It is based on the presumption the landowner has acquired knowledge by virtue of his ownership. Lack of knowledge is subject to exposure by the condemning authority. Regardless of what is disclosed, it does not affect the competency of the landowner to testify, but only the weight to be given to the testimony."

This foundation, premised on a property owner's familiarity with his or her own property and values in the neighborhood, is consistent with the definition of fair market value—the price a well-informed buyer is willing to pay and a well-informed seller is willing to accept. See K.S.A. 26-513(e). This foundation does not extend to the cost appraisal method, however. Instead, the property owner's president in *Manhattan Ice* "was not qualified, as a lay

landowner, to assemble the components of and calculate replacement cost, *i.e.*, the cost to replace existing improvements on the land minus depreciation plus the value of the land evidenced thru comparable sales." *Manhattan Ice*, 294 Kan. at 76; see 5 Nichols on Eminent Domain § 20.03[3], p. 20-10 (recognizing need to examine technical journals to determine costs to be included when applying cost appraisal method). "Nor [can] the jury, unguided by expert testimony or similarly established or recognized authority." *Manhattan Ice*, 294 Kan. at 76.

The school district argues the same holding applies in this case. In response, the Diebolts argue that this case is unlike *Manhattan Ice* because Diebolt has personal knowledge of all the items on Deposition Exhibit 1 and he was not relying on hearsay to support his opinion of value. To this extent, this case is distinct from *Manhattan Ice*. Unlike the property owner in that case, Diebolt was not trying to bootstrap an expert's valuation through his own testimony, and he had personal knowledge of the costs he had incurred while owning the property. But these distinctions do not impact the holding in *Manhattan Ice* that a property owner is not qualified to assemble the components of a cost analysis. Nor does it address the trial judge's statement in this case that many of the items listed in Deposition Exhibit 1 would not be relevant to a cost analysis even if performed by an expert. Given Diebolt's admission that he did not have appraisal expertise, reasonable people would agree with the trial judge that Diebolt was not qualified to perform a cost appraisal and, therefore, the judge did not abuse his discretion in excluding the evidence.

In summary, the trial judge did not err under either the rationale listed in the judge's order—relevancy—or the one mentioned at the pretrial hearing—the holding in *Manhattan Ice* requiring a property owner to have expertise in the cost appraisal method before testifying to the owner's own cost-basis calculation of value.

Affirmed.

MORITZ, J., not participating.

DANIEL D. CREITZ, District Judge, assigned.