IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,732

DOUG GARBER CONSTRUCTION, INC.,
*Appellant*,

v.

MICHAEL S. KING, in his Capacity as SECRETARY OF TRANSPORTATION
for the STATE OF KANSAS,
*Appellee.*

SYLLABUS BY THE COURT

1.

A district court has broad discretion to admit or reject evidence in an eminent domain proceeding, including evidence of fair market value.

2.

The enhancement or depression of real property value due to the project for which condemnation is sought is excluded in determining fair market value.

3.

In an eminent domain action, a property owner may testify about the fair market value of the property based on his or her familiarity with the property, but the opinion will be excluded if based on legally improper considerations.

Appeal from Douglas District Court; ROBERT W. FAIRCHILD, judge. Opinion filed January 27, 2017. Affirmed.

*David J. Berkowitz*, of Berkowitz Law Office, of Lawrence, argued the cause and was on the brief for appellant.

*Paul G. Schepers,* of Orrick & Erskine, L.L.P., of Overland Park, argued the cause, and *Timothy P. Orrick* and *Caroline Gurney*, of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  The Secretary of Transportation (Secretary) condemned a property in Lawrence to facilitate construction of the South Lawrence Trafficway (SLT). At trial, the jury awarded the property owner, Doug Garber Construction, Inc. (Garber), $112,000 as compensation for the taking. Garber appeals directly to this court pursuant to K.S.A. 2015 Supp. 26-504. Garber claims the district court erred by issuing two orders in limine that excluded certain valuation testimony. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This case arose from an eminent domain proceeding in Douglas County. Garber owned property located at 3501 O'Connell Road in Lawrence, Kansas (Property). The Property was a half-acre plot containing one residence that Garber previously leased to tenants. The Secretary initiated an eminent domain proceeding to acquire the Property for the relocation of 31st Street as part of its construction of the SLT. The SLT project was designed to move existing state highway K-10 onto a new alignment that would begin at the junction between U.S. 59 and K-10 and reconnect with existing K-10 in east Lawrence.

Since the SLT cuts through the Baker Wetlands, the Kansas Department of Transportation (KDOT) was required to construct replacement wetlands as mitigation. Part of the mitigation plan was to relocate certain roads, including 31st Street, and convert the vacated land back to wetlands. The relocation of 31st Street required KDOT to condemn the Property.

The record does not clearly define the relationship between KDOT and the City of Lawrence in the relocation of 31st Street to facilitate the SLT. KDOT's engineer testified at trial that the 31st Street relocation project was done by the City of Lawrence through KDOT's Bureau of Local Projects. The two entities coordinated on the 31st Street project and agreed to let both projects to the same contractor at the same time. The district court found that 31st Street was being relocated as a direct result of the SLT.

The Secretary initiated an eminent domain proceeding to acquire the Property. The court-appointed appraiser awarded Garber $105,000 for the fair market value of the Property. Garber appealed to the district court, disputing the amount of compensation. Before trial, the Secretary filed a motion in limine to exclude testimony from Garber's proposed expert, Richard Caplan, an independent real estate advisor, and Garber's President, Bernice Garber. The district court's exclusion of the testimony of these two witnesses is at issue before us.

Richard Caplan prepared a "Highest and Best Use Study" for the Property. According to the report, the new 31st Street was designed to serve the extension of the SLT and create a new entry into Lawrence from the east. Construction of the SLT and 31st Street would put the Property at a major intersection. Thus, the Property's proximity to the SLT would increase traffic and create "a range of land use opportunities that the site could reasonably be expected to be developed, thereby significantly enhancing the value of the property." The report estimated that the taking caused a loss of between $1,795,600 to $3,352,825 in future commercial development.

The district court granted the Secretary's motion to exclude Caplan's report and valuation testimony because they violated the Project Influence Rule. The Project Influence Rule provides:

3

"Enhancement or depression of value due to anticipated improvements by a project for which condemnation is sought is excluded in determining fair market value. However, a loss in value caused by an unrelated project may be considered in determining fair market value of the property taken. The party asserting that two or more projects should be considered as one for valuation purposes has the burden of proof." *Hudson v. City of Shawnee*, 246 Kan. 395, Syl. ¶ 12, 790 P.2d 933 (1990).

The district court found it impossible to separate the Property's newfound prime location from the SLT project. It reasoned,

"There is no language in Caplan's report about the valuation existing independent of the new roadways and SLT. The Secretary correctly identifies that '*enhancement* or depressing of value due to anticipated improvements by the project for which the condemnation is sought is excluded in determining fair market value.' . . . Plaintiff would have the court believe the development of a new 'gateway' entrance into Lawrence adjacent to the Subject Property is a separate project from the development of the SLT. However, Plaintiff provides no evidence that this is the case, and the court on its own sees no logical way to separate the new roadway and the connecting SLT. The new entrance is only being created because of the SLT, as the court understands the project.

"It is clear that the SLT and associated development cannot be used to increase the fair market value of the Subject Property. Further, any testimony from Caplan would confuse and mislead the fact-finder at trial. For this reason, the court grants the Secretary's motion in limine prohibiting Caplan's report or associated testimony on his valuation because it inappropriately considers the influence of the very project that fueled the taking in this case."

Bernice Garber, as owner of the Property, planned to testify that the Property's fair market value was either $40 million or $347 million. The $40 million figure calculation was based on a comparable sales method. However, Ms. Garber likened the half-acre Property to miles of highway in Illinois and Indiana that were sold for billions of dollars. The district court found there was no logical connection between the property interests

4

Ms. Garber compared and excluded this portion of her testimony. The $347 million value was based on Ms. Garber's plan to create a privately run "Garber Golden Gateway" on the Property that would play music and charge cars a toll for entering Lawrence. The district court excluded the testimony because it would confuse and mislead the jury and was based on business profits, which are noncompensable losses in a condemnation action. *City of Wichita v. Denton*, 296 Kan. 244, 263, 294 P.3d 207 (2013).

The case proceeded to trial, and the jury determined the value of the Property was $112,000. Garber appealed, contending that the district court erred by excluding Caplan's entire testimony and limiting Ms. Garber's testimony.

ANALYSIS

At issue in this case is the district court's grant of two orders in limine to exclude valuation opinion testimony. The purpose of an order in limine is to ensure a fair and impartial trial for all parties by excluding inadmissible evidence, prejudicial statements, and improper questions from trial. *Denton*, 296 Kan. at 255-56. A trial court should grant an order in limine when it finds two factors are present:

> "'(1) The material or evidence in question will be inadmissible at a trial; and (2) The pretrial ruling is justified as opposed to a ruling during trial because the mere offer or mention of the evidence during trial may cause unfair prejudice, confuse the issues, or mislead the jury; the consideration of the issue during the trial might unduly interrupt and delay the trial and inconvenience the jury; or a ruling in advance of trial may limit issues and save the parties time, effort, and cost in trial preparation.'" *Manhattan Ice & Cold Storage v. City of Manhattan*, 294 Kan. 60, 69, 274 P.3d 609 (2012) (quoting *State v. Shadden,* 290 Kan. 803, 816, 235 P.3d 436 [2010]).

5

Garber does not claim the district court's ruling was premature, only that it was wrong. Therefore, the issues before us are narrowed to the district court's decision to exclude the evidence.

The right to take private property for public use is inherent in the State but limited by state and federal law. *Denton*, 296 Kan. at 252. The Fifth Amendment to the United States Constitution mandates that private property shall not be taken for public use without just compensation. K.S.A. 26-513 codifies the Fifth Amendment and provides methods for determining compensation due. *Denton*, 296 Kan. at 252. When, as here, an appraiser's award is appealed in an eminent domain action, the only issue to be determined will be the compensation required by K.S.A. 26-513. *Miller v. Preisser*, 295 Kan. 356, 364-65, 284 P.3d 290 (2012); see K.S.A. 2015 Supp. 26-508.

K.S.A. 26-513(b) provides that if, as here, the entire tract of land is taken, "the measure of compensation is the fair market value of the property or interest at the time of the taking." Fair market value is defined as "the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion." K.S.A. 26-513(e). Fair market value must be determined by "use of the comparable sales, cost or capitalization of income appraisal methods or any combination of such methods." K.S.A. 26-513(e). However, a property owner may also testify about fair market value based on familiarity with his or her property and values in the neighborhood. *In re Acquisition of Property by Eminent Domain*, 299 Kan. 37, 50, 320 P.3d 955 (2014).

A district court has broad discretion to admit or reject evidence—including evidence of fair market value—in an eminent domain proceeding. See *Preisser*, 295 Kan. at 363; *City of Wichita v. Eisenring*, 269 Kan. 767, 773, 7 P.3d 1248 (2000). Evidence in an eminent domain proceeding consists mostly of witness opinions because "the

valuation of real estate is largely a subjective matter and cannot be definitely determined by the application of any exact principle of science." *Eisenring*, 269 Kan. at 774. A district court is responsible for defining the extent of compensable rights, "and if it is established that value testimony was based on noncompensable items or the credibility of the testimony is otherwise destroyed the testimony should be stricken in response to a proper motion." *Morgan v. City of Overland Park*, 207 Kan. 188, 190, 483 P.2d 1079 (1971).

The questions here are whether the district court erroneously excluded (1) Caplan's entire expert testimony because it violated the Project Influence Rule and (2) part of Garber's lay testimony because her fair market value estimate was based on a comparative sales method that lacked probative value.

*The district court properly excluded Caplan's expert testimony.*

First, Garber argues the district court erroneously granted an order in limine excluding Caplan's report and testimony regarding his fair market value calculation. The parties agree that the Project Influence Rule is controlling. The Project Influence Rule excludes certain factors from the fair market value calculation in an eminent domain proceeding. Generally stated, the "*enhancement* or depressing of value due to anticipated improvements by the project for which condemnation is sought is excluded in determining fair market value." *Hudson*, 246 Kan. at 406. The rule can fairly be understood as an interpretation of the plain meaning of—and legislative intent inherent in—K.S.A. 26-513(b), that the fair market value of the property must be measured "at the time of the taking." See *Kansas City Power & Light Co. v. Strong*, 302 Kan. 712, 725, 356 P.3d 1064 (2015) ("Where [statutory] language is plain and unambiguous, it is determinative of legislative intent."). In other words, the statute dictates that fair market value must be calculated before the project improvements for which condemnation is sought are made.

7

A district court's exclusion of expert or lay opinion testimony is reviewed for abuse of discretion. See *In re Eminent Domain*, 299 Kan. at 44. A district court abuses its discretion if no reasonable person would adopt the district court's view, the decision was based on an error of law, or the decision was based upon an error of fact. *Strong*, 302 Kan. at 729. Thus, "even under the deferential abuse of discretion standard of review, an appellate court has unlimited review of legal conclusions upon which a district court's discretionary decision is based." *Preisser*, 295 Kan. at 364.

Here, Garber does not contest that the Project Influence Rule applies as a matter of law but argues the district court's application of the rule was premised on an erroneous factual finding—that the two projects should be considered as one. The Secretary had the burden to show that the SLT and the 31st Street project should be treated as one project for valuation purposes. *Hudson*, 246 Kan. at 406 ("The party asserting that two or more projects should be considered as one for valuation purposes has the burden of proving the projects are related."). The lower court made a factual finding that the projects should be considered as one for valuation purposes, saying:  "[T]he court on its own sees no logical way to separate the new roadway and the connecting SLT. The new entrance is only being created *because of the SLT*." (Emphasis added.) In other words, but for the SLT, the 31st Street Project would never have been contemplated, let alone completed. As a general matter, appellate courts will not reweigh the evidence and will not disturb a lower court's factual findings when they are supported by substantial competent evidence. See, *e.g.*, *Garvey Elevators, Inc. v. Kansas Human Rights Comm'n*, 265 Kan. 484, 492, 961 P.2d 696 (1998).

Here, we conclude the lower court's factual finding that the 31st Street project was contingent upon the SLT—and thus the two must be treated as one for valuation purposes—was both supported by the evidence and correct as a matter of law.

Garber claims the testimony of KDOT's engineer demonstrates that the 31st Street improvement was a City of Lawrence Project separate from KDOT's construction of the SLT. However, the record shows only that the KDOT engineer testified at trial—long after the district court chose to exclude Caplan's valuation testimony. If anything, the engineer's trial testimony supported the district court's findings. For example, the engineer testified, "[W]ith the South Lawrence Trafficway project we relocated a portion of 31st Street."

Garber, as the party asserting prejudicial error, "has the burden of designating a record that affirmatively shows the error." *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015). But the only relevant evidence appearing in the record on appeal available to the district court at the time the orders in limine were entered—Caplan's report—provides sufficient evidence by itself to support the district court's factual determination that the two projects should be treated as one. The report consistently treats the "completion of the South Lawrence Trafficway and 31st Street at O'Connell Road" as a unified project that would catalyze commercial development. Indeed, the report defines the relationship between 31st Street and the SLT at the outset: "The Garber Parcel, in part, accommodates the new 31st Street *being built to serve* the extension of the South Lawrence Trafficway (State Highway K-10) and as a major artery in southern Lawrence and a new entry into Lawrence from the east." (Emphasis added.) Ultimately, the report concludes:

> "If the Garber Parcel had remained under private ownership, the site would have reasonably been developed for a commercial development at a strategic entrance to the city *upon completion of 31st Street and opening of the South Lawrence Trafficway.* Because of the prime location of the parcel, it is projected that there would have been an average of 22,700 vehicles per day passing the site that would have enhanced the viability of the development." (Emphasis added.)

9

Thus, the report was premised on the fact that the new 31st Street was "built to serve the extension of the South Lawrence Trafficway" and would become a new entry into Lawrence from the east. According to Caplan's report, the relocation of 31st Street was contingent on construction of the SLT.

Furthermore, Caplan's report based its fair market value calculation on new land use opportunities that would arise *after* the SLT was constructed and 31st Street served as a new gateway to Lawrence. Thus, the district court could reasonably determine that the two projects should be considered as one for valuation purposes. We conclude the district court did not abuse its discretion when it determined that Caplan's testimony violated the Project Influence Rule.

*The district court properly excluded Garber's lay testimony.*

Second, Garber argues the district court erred in excluding Ms. Garber's testimony. In an eminent domain action, a property owner who does not qualify as an expert may testify about the fair market value of the property based on familiarity with his or her property and values in the neighborhood. *In re Eminent Domain*, 299 Kan. at 50. But, a property owner's opinion about fair market value will be excluded if based on legally improper considerations, such as an unrecognized appraisal method. 299 Kan. at 47-48.

Ms. Garber's $40 million valuation estimate was, in theory, premised on a permissible comparable sales approach. See K.S.A 26-513(e); *Mooney v. City of Overland Park*, 283 Kan. 617, 622, 153 P.3d 1252 (2007) ("Under the market or sales approach, the appraiser looks at sales of comparable properties in the area to arrive at a total value of the improved property."). However, Ms. Garber's approach did not, in fact, evaluate *comparative* property—she instead compared her half-acre plot to miles of highway in Illinois and Indiana that had been sold for billions of dollars. When asked

10

how she utilized these sales to calculate the total valuation, Ms. Garber responded, "I think I just divided it up by foot, by the number of feet."

Moreover, Ms. Garber estimated the "Garber Golden Gateway" would generate over $22 million in business income in one year by charging a $2 gate fee to 31,100 cars passing through per day. Subtracting operating expenses and applying an 8% capitalization rate, Ms. Garber concluded the Property was worth a total of $347 million in future profits. Even if we ignored the speculative character of Ms. Garber's envisioned "Golden Gateway" to Lawrence, and even if a private citizen could lawfully collect tolls from drivers on a public roadway, such testimony is inadmissible to establish property valuation. "It has long been the rule in this state that the profits from a business conducted on a particular piece of property are not compensable losses in a condemnation action." *Denton*, 296 Kan. at 262.

The district court did not abuse its discretion.

Affirmed.

BILES, J., not participating.

DAVID A. RICKE, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Ricke was appointed to hear case No. 113,732 vice Justice Biles under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.