NOT DESIGNATED FOR PUBLICATION

No. 120,351

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

MADISON R. HARWOOD,
*Appellee*,

and

JASON C. BLEVINS,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed August 2, 2019. Reversed and remanded with directions.

*Morgan O'Hara Gering*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

No appearance by appellee.

Before GARDNER, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM:  Jason Blevins (Father) appeals the district court's order dividing the residency of his two minor children. A divorce decree granted Father and Madison Harwood (Mother) joint custody. The divorce agreement awarded Mother primary residence of the children, but the children had to reside within 75 miles of Wichita. Mother remarried, relocated to Texas, and filed a motion to allow her to move the children to Texas. Father filed a motion for primary residential custody, but the district court ordered divided custody, ordering the son to reside with Father, and the daughter to reside with Mother in Texas. Father appealed. We find that the district court erred in

1

finding that exceptional circumstances justified the splitting of the residency of the children. The case is reversed and remanded for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother married in Wichita in 2009. They had two children, H.B. and G.B. Mother filed for divorce in October 2015, and the divorce was finalized in April 2016.

Around May 2015, Father took a job in California to improve the family's financial circumstances. Father traveled back and forth between Wichita and California for 10-15 days at a time until ending the job in October 2016. Father did not enjoy being away from his children.

Mother remarried in December 2016. In April 2017, Mother and her new husband, J.H. (Stepfather), decided to move to Texas, assuming she would take the children with her. Father took over primary residential care of the children after Mother moved. Prior to moving to Texas, Mother had always lived in the Wichita area. The children have always lived in the Wichita area and a large amount of Mother's family live in the Wichita area. The children regularly visited grandparents from both sides of the family in Wichita, and the grandparents attended the children's school activities.

As part of the divorce agreement, the parents agreed to joint legal custody with Mother receiving primary residential custody of both children. Under the agreement, neither party was allowed to move the children's residence permanently outside the State of Kansas or more than 75 miles outside of Wichita unless both parties agreed or by court order. Father wanted this provision included because he wanted his children to stay in the Wichita area near him and the rest of their family.

2

In May 2017, Mother moved to modify the divorce agreement so she could relocate the children to Texas. In response, Father requested primary residential custody. In April and May 2018, the district court held evidentiary hearings to determine the residency of the children. Many witnesses testified including Mother, Father, and Stepfather.

Father and Mother each testified about potential substance abuse by the other. Mother testified Father used marijuana as his drug of choice during the marriage. However, it was never an issue during the divorce proceedings and she believed he had stopped using it. Mother further testified that she did not have any concerns of Father's drug use and any allegations of drug use by Father were irrelevant to the children's residency proceedings. Father testified he had used marijuana and painkillers following surgery to deal with pain in the past but he did not currently use them. Father testified he never used marijuana around the children and offered his willingness to take a drug test. A case manager testified about Mother's potential misuse or abuse of prescription pain medications. After Mother had spine surgery in 2012, Father became concerned about her prescription medication use. Father expressed concerns about Mother's medication use getting out of hand, but he agreed she should have primary residency after they divorced.

Testimony indicated the son, H.B., had a difficult time adjusting to his parent's divorce. H.B. would sometimes act violently towards G.B. and be disrespectful to Father, which was unusual. Occasionally when put in time out H.B. would hit and scratch himself. However, Father testified H.B.'s behavior improved over the past year, and H.B.'s aggression towards G.B. was much better.

Stepfather testified at the hearings that he believed Father harbored hostility towards him. He testified Father made derogatory comments about him in front of the children. Stepfather felt tension existed between him and Father which included competition for participation in activities with the children. For example, Stepfather

believed he, and not Father, should participate in Boy Scouts with H.B., because Stepfather achieved the rank of Eagle Scout. Stepfather stated it was not his intention to replace Father in the children's lives.

Stepfather also testified to knowing Father was trying to start a business named "eSenior.com" in the fall of 2017. Documents and testimony showed Stepfather purchased the business entity name "eSenior" during this time with the intent to resell it. Stepfather also indicated he also looked into buying the internet domain name "eSenior.com" but it was already purchased. Stepfather did this while knowing Father's future business income would support the children.

The children spent extensive time with both parents following the divorce, and no evidence was presented that either parent abused the children. Mother had more experience dressing G.B. During picture day at G.B.'s school, Mother was upset with how Father had dressed G.B. The night before picture day, Mother had asked Father to ensure G.B. did not wear scuffed shoes and pajama pants for picture day, but Father did not comply with Mother's request.

The final evidentiary hearing took place May 30, 2018. About two weeks later, the district court found exceptional circumstances required the siblings be divided and entered judgment ordering H.B. to reside with Father and G.B. to reside with Mother. The district court cited seven exceptional circumstances as requiring this order: (1) the mobility and hurried moves of the parties; (2) potential future substance abuse by Mother and Father; (3) potentially better emotional health for the children; (4) preventing Stepfather from usurping Father's role in children's lives; (5) Mother being better attuned to physical and emotional needs of G.B; (6) divided residency incentivizing the parents to cooperate; and (7) these factors outweighing other considerations such as school, family, and other ties to the community.

4

Neither Father nor Mother requested divided residency of the children. The district court issued the final order to the parents on October 12, 2018.

Father now appeals.

### THE DISTRICT COURT ERRED WHEN FINDING EXCEPTIONAL CIRCUMSTANCES JUSTIFIED DIVIDED RESIDENCY OF THE SIBLINGS

Father argues the district court erred when it ordered divided residency of H.B. and G.B. Father asserts no exceptional circumstances existed to justify the order and neither parent requested it. Mother did not submit a brief in this appeal.

In its order of divided residency, the district court referenced its use of factors found in K.S.A. 2018 Supp. 23-3203. This statute lists over a dozen factors to consider in determination of legal custody, residency, and parenting time. However, the district court's order did not reference the statute which empowers a court to issue an order of divided residency. The statute states: "In an *exceptional case*, the court may order a residential arrangement in which one or more children reside with each parent and have parenting time with the other." (Emphasis added.) K.S.A. 2018 Supp. 23-3207(b). This arrangement is referred to as divided residency.

An appellate court generally reviews a district court's order granting or denying modification of custody and residency arrangements for children for an abuse of discretion. See *In re Marriage of Grippin*, 39 Kan. App. 2d 1029, 1031, 186 P.3d 852 (2008). However, in matters involving divided residency of siblings which necessitate interpreting and applying the divided residency statute, the Kansas Court of Appeals has applied the following standard of review:

> "'Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by

5

substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law.'" *In re Marriage of Williams*, 32 Kan. App. 2d 842, 846, 90 P.3d 365 (2004) (quoting *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 747, 27 P.3d 1 [2001]).

In making this determination, an appellate court should give due deference to the district court. *In re Marriage of Williams*, 32 Kan. App. 2d at 846.

In the case at hand, we must determine whether substantial competent evidence supported the district court's reasons for determining exceptional circumstances justified dividing the residency of H.B. and G.B. K.S.A. 2018 Supp. 23-3207(b) does not provide a definition of an exceptional case or exceptional circumstances, nor does existing caselaw. See 32 Kan. App. 2d at 849.

In the past, the Kansas Court of Appeals has refused to give these terms a precise definition.

"Perhaps it is best that neither statutory law nor case precedent provides a definition for 'exceptional case.' The determination is too important to be subjected to a mechanical application of an artificial litmus test containing three factors or two prongs. However, we feel comfortable definitively stating that, when the district court makes a finding, supported by substantial competent evidence, that divided custody is in a child's best interests, the court has met the requirement of establishing an 'exceptional case.'" *In re Marriage of Williams*, 32 Kan. App. 2d at 849.

"Substantial competent evidence is "'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can be reasonably be resolved.'"' [Citation omitted.]" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015). Evidence is relevant if it has any tendency in reason to prove any material fact. K.S.A. 60-401(b). "'The concept of relevance under

6

Kansas law includes both whether evidence is probative and whether it is material.' [Citation omitted.]" *In re Care & Treatment of Miller*, 289 Kan. 218, 228, 210 P.3d 625 (2009). Evidence is material when the fact it supports is in dispute and is significant under the substantive law of the case. *In re Acquisition of Property by Eminent Domain*, 299 Kan. 37, 44, 320 P.3d 955 (2014).

*In re Marriage of Williams* established a threshold for sufficient evidence to uphold divided residency of siblings. There, the court relied on specific facts showing a son should live separate from his sister after the father petitioned to have the son live with him. These findings included the son wanting to live with the father instead of the mother, the son perceiving the mother gave the daughter preferential treatment over him, the strained relationship between the two siblings, the mother's failure to recognize and address the son's behavioral problems, the father's ability to provide the son his own separate room from his sister, and the father's better ability to determine the best interests of the son. "However, all those findings are penultimate. The primary criterion in a custody determination is the best interests of the child." 32 Kan. App. 2d at 848; see K.S.A. 2018 Supp. 23-3201.

Under this example of sufficient competent evidence and primary criteria for determining residency, no signs of exceptional circumstances required separation of H.B. and G.B. Father correctly argues the district court "manufactured" benefits of separating the siblings while disregarding the detrimental effects of the children being separated. The evidence cited by the district court is not relevant to separating the children. The district court speculated about benefits which would result from divided residency of the siblings instead of citing substantial competent evidence which would require their separation.

The district court cited seven reasons for divided residency. The behaviors and issues related to the court's reasoning are nothing more than the typical issues occurring

7

in domestic cases. Nothing out of the ordinary and certainly not so extreme as to be considered exceptional. The district court's findings seem to be directed at controlling the parents' future behavior. The findings focus on matters that the parties agree, and at least in part the court agrees, are not current concerns. Trying to address future behavior is speculative at best.

The district court presumably believes that splitting residency somehow meets the best interests of the children. However, there is no analysis how splitting residency would address any current need or issue the children are wrestling with. Whenever there is a divorce with children involved, there is a disruption in the children's lives. To a large extent, what they have always known no longer exists. One thing they can have is the emotional consistency of growing with a sibling. To threaten that relationship by splitting residency, there must be a showing that a child or the children face such an exceptional trauma that living separately is better than living together. There has been no showing how living separately would address any issue these children are facing or how their lives would be improved in any way.

Whether there are benefits for dividing the residency of G.B. and H.B., the district court's decision must rely on substantial competent evidence to justify a finding of exceptional circumstances before dividing the residency of the siblings. See 32 Kan. App. 2d at 848-49; see K.S.A. 2018 Supp. 23-3207(b). There has been no showing of such evidence in this case and, therefore, remand is appropriate.

Reversed and remanded with directions to determine residency arrangements in accordance with K.S.A. 2018 Supp. 23-3207.

8